628 So.2d 211 (1993)
Green E. and Barbara UNDERWOOD, Plaintiffs-Appellants,
v.
Anthony W. DUNBAR and Allstate Insurance Company, Defendants-Appellees.
No. 25234-CA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
Writ Denied February 25, 1994.
*213 Arbour & Aycock by Larry Arbour, West Monroe, for appellees.
Donald & Gates by M. Randall Donald, Monroe, for appellants.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
HIGHTOWER, Judge.
In an action for damages arising from an automobile accident, plaintiff, Green Underwood, appeals both the allocation of fault and the adequacy of certain awards. Finding no manifest error upon a review of the record, we affirm.

FACTS
On the rainy afternoon of January 7, 1990, motor vehicles driven by Underwood and *214 Anthony Dunbar collided at the intersection of Louisiana Highway 546 ("La. 546") and U.S. Highway 80 ("U.S. 80"). At that location, a flashing red light and stop signs control La. 546, a two-lane roadway running north and south, while east-west traffic on the other thoroughfare encounters a blinking yellow caution signal. A hilltop, situated approximately 700 feet (0.15 miles) west of the intersection on U.S. 80, obstructs visibility.
Dunbar drove his thirty-four-foot motorhome southward on La. 546, also known as the Cheniere-Drew Road. Stopping at the intersection as directed by the signals, he scanned U.S. 80 for oncoming traffic. To his right, he could only see the crest of the above-mentioned hill; a single car appeared far to his left, affording ample time for crossing the favored highway. Dunbar thus began traversing the two-lane roadway. After successfully maneuvering across the westbound portion of the highway, he sighted an approaching pickup approximately 250 feet to his right. Determining that braking would be useless at this point, he accelerated in an effort to avoid a collision. Nevertheless, the truck collided with the right rear wheel of the recreational vehicle.
The other driver, Underwood, had been proceeding east on U.S. 80 in a 1989 Ford Ranger. His wife rode as a passenger and, near the top of the hill, commented on the attractive motorhome sitting at the intersection. Although something then distracted plaintiff's attention from the roadway, he continued to travel at approximately 55 miles per hour. When he next observed the recreational vehicle, it had reached the middle of the eastbound lane. Unable then to stop his pickup on the wet roadway, he chose to swerve to the right, striking the crossing motorhome in the manner previously described. As a consequence of injuries sustained in the collision, Underwood later instituted suit against Dunbar and his insurer, Allstate Insurance Company.[1]
After trial, the lower court found each driver fifty percent at fault and fixed Underwood's general damages at $16,000, in addition to $1,404 for past lost wages. Also, under that adjudication, his medical expenses encompassed $2,763.11 for past outlays and $300 for future medication. After the fifty percent reduction, a total award of $10,233.55 resulted. Finally, the district judge assessed one-third of the costs to plaintiff and two-thirds to defendants. As stated, Underwood now appeals.

DISCUSSION

Allocation of Fault
Appellant first challenges the trial court's determination that his actions contributed to the accident. Essentially, it is urged that Dunbar should have been found solely at fault.
Causation and apportionment of fault constitute questions of fact, and the fact-trier's decision in that regard should not be overturned absent a showing of manifest error. Coleman v. Rabon, 561 So.2d 897 (La.App. 2d Cir.1990), writ denied, 567 So.2d 617 (La.1990). We are further mandated to view the evidence in the light most favorably supporting the trial court judgment. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Dominque, 365 So.2d 1330 (La.1978). Of course, each intersectional accident depends and must be decided upon its own facts. Crump v. Ritter, 583 So.2d 47 (La. App. 2d Cir.1991), writ denied, 588 So.2d 1113 (La.1991). Fault in such a collision, then, will be determined by evaluating the conduct of each motorist under all the circumstances of that particular case. Id.
In allocating comparative fault, consideration must be directed toward the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. Some of the factors which may influence the degree of fault assigned in that assessment are: 1) whether the conduct resulted from inadvertence or involved an awareness of the danger; 2) how great a risk the conduct created; 3) the significance of what the actor sought by the conduct; 4) the capacities of the actor, whether superior or inferior; and 5) any extenuating circumstances which might require *215 the actor to proceed in haste, without proper thought. Of course, as evidenced by concepts such as last clear chance, the relationship between the negligent conduct and the plaintiff's harm are also considerations in determining the relative fault of the parties. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Jackson v. A.L. & W. Moore Trucking, 609 So.2d 1064 (La. App. 2d Cir.1992).
Appellant argues that the record clearly illustrates Dunbar's fault. We agree. When faced with a stop sign and a flashing red light, a driver is charged to halt before entering an intersection and to yield the right of way to all vehicles which have entered the intersection from another highway, or which are approaching so closely on that highway as to constitute an immediate hazard. LSA-R.S. 32:123, 234. Upon approaching a favored highway, a driver must yield to oncoming vehicles on that thoroughfare and avoid creating a dangerous situation. Ogden v. Dalton, 501 So.2d 1071 (La.App. 2d Cir. 1987).
In the instant case, Dunbar stopped his motorhome at the intersection involved. Observing conditions first to the right and then to the left, he saw no vehicles which would obstruct his path across U.S. 80. However, the trial court found fault in his failure to look right again before traversing the highway. While this omission obviously contributed to the accident, we disagree with Underwood's notion that it constituted the sole cause of the collision. While appellant had been traveling the favored highway prior to the mishap, an amber flashing light controlled his passage through the crossing. Under LSA-R.S. 32:234, drivers may proceed through such signals only with caution.
Clearly, a motorist facing a flashing yellow light must exercise a greater degree of care and vigilance than one approaching a green light or an uncontrolled crossing. Jackson, supra; Fruge v. State, Dept. of Transportation and Development, 536 So.2d 745 (La.App. 3d Cir.1988), writ denied, 538 So.2d 593 (La.1989). Though such a driver has the right of way and may ordinarily expect that a motorist on an inferior street will stop before entering the intersection, or that a motorist who has so stopped will appropriately remain in place, the driver on the favored street can proceed under that assumption only until he sees or should have seen that the other vehicle will not obey the law. Jackson, supra; Touchet v. Champagne, 488 So.2d 412 (La.App. 3d Cir.1986). Said differently, the driver approaching a flashing yellow light is under a duty to exercise caution and vigilance so that he may ascertain whether a crossing can be safely negotiated. Jackson, supra.
In such instances, the required degree of caution includes approaching the intersection at a reasonable speed and maintaining a proper lookout for danger. What constitutes reasonable speed and proper lookout must be determined, of course, in light of the circumstances of the individual case. Jackson, supra; Touchet, supra. An amber light warns the motorist to proceed with care, and he is guilty of negligence if he fails to take measures to avoid obvious danger. Jackson, supra.
Under the present facts, appellant could not unmindfully presume that Dunbar would remain at the stop sign. Underwood admitted at trial that, immediately after observing the motorhome, he diverted his attention from the upcoming intersection and did not see the crossing vehicle again until it appeared in his lane of travel. His testimony further indicated that he continued traveling between 50 and 55 miles per hour and failed to apply his brakes prior to impact. Indeed, had the driver of the pickup maintained a proper outlook, the record suggests he could have slowed sufficiently to avoid the accident. Furthermore, the trial court deemed his conduct especially unreasonable in light of his familiarity with the hazardous location and its line-of-vision limitations.
In short, the record amply supports the allocation of fifty percent fault to each driver.

General Damages
Appellant next contends that the trial court abused its discretion in granting only $16,000 in general damages.
*216 In assessing damages in cases of offenses, quasi-offenses, and quasi-contracts, much discretion must be left to the judge or jury. LSA-C.C. Art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion, based on the particular injuries and their effect upon the particular individual injured. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993); Reck v. Stevens, 373 So.2d 498 (La. 1979); Brimer v. Copeland, 604 So.2d 1388 (La.App. 2d Cir.1992). Upon finding such an abuse, consideration of other cases becomes relevant, but only to determine whether a contested award is greatly disproportionate to the mass of past awards for truly similar injuries and losses. Youn, supra; Reck, supra; Thomas v. Petrolane Gas Service, Ltd., 588 So.2d 711 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1201 (La.1993).
Immediately after the accident, an ambulance transported Underwood to the emergency room of a nearby hospital. The ensuing medical examination revealed no fractures, only cuts and bruises to the arms, ribs, and knees. Concerned about possible trauma to the head, the doctors offered to hospitalize the patient overnight. However, after he declined, they released him into the care of his step-children. The contusions and abrasions healed within two weeks, but continued neck pain and headaches prompted plaintiff to seek treatment from a chiropractor, who suggested consultation with an orthopedist.
Thus, on February 8, 1990, Underwood began seeing Dr. Rifat Nawas. After concluding that physical therapy provided no relief from the reported pain, the doctor soon terminated such treatments. X-rays, ordered by the physician, revealed a minimal degree of degenerative disc disease. Earlier, in 1979, plaintiff had undergone a cervical fusion which remained asymptomatic prior to the accident at hand. Considering all these factors, the orthopedist diagnosed a musculoligamentous sprain/strain of the cervical spine.
On May 2, 1990, Dr. Nawas transferred the patient to a partner in his orthopedic practice, Dr. Sidney Bailey. At that time, a physical examination proved essentially normal except for slightly limited motion. Office visits, occurring three to five months apart, continued to present complaints of neck and head pain until June 1991, despite anti-inflammatories and pain medication. Similar to the previous physician, Dr. Bailey set forth a diagnosis of "cervical strain/sprain status post anterior cervical fusion." Although such injuries usually heal fairly rapidly, he opined that Underwood's recovery could have been slower due to the previous surgery. Indeed, in a January 1992 deposition, Dr. Bailey stated that he would not be surprised if the patient experienced continued intermittent neck complaints.
At trial, two years after the accident, Underwood reported that his pain symptoms still required him to take Tylenol quite frequently and had restricted many of his leisure time activities: coaching baseball; deer hunting; and gardening. However, after initially missing a week of work, he had successfully returned to his job which necessitated the routine lifting of fifty-pound sacks of material.
Accordingly, although plaintiff received medical attention during the course of some eighteen months and complained of pain two years post-accident, we do not find the $16,000 general damage award to constitute an abuse of discretion. Cf. Boulmay v. Dubois, 593 So.2d 769 (La.App. 4th Cir.1992), awarding $20,000 where the victim suffered chronic neck pain for five years after the accident and received a recommendation, later deemed too speculative, for spinal fusion surgery; Blankenship v. Champion Ins. Co., 599 So.2d 505 (La.App. 3d Cir.1992), affirming $7,500 for the painful aggravation of a pre-existing neck condition that continued in excess of a year.

Future Lost Wages
Next, estimating that his condition will cause him to miss about seven days of work each year for the next decade, Underwood argues that the trial court erred in making no award for future lost wages. The record, however, reveals plaintiff continuing to perform his employment duties despite a *217 degree of reported discomfort. Indeed, some of the symptoms are attributable to a lower back condition which, according to Dr. Bailey, did not result from the accident.
Claims for future lost earnings must be proved to a reasonable certainty. Henry v. National Union Fire Ins. Co., 542 So.2d 102 (La.App. 1st Cir.1989), writ denied, 544 So.2d 405 (La.1989). The present record simply does not support the contention that continued absences from work will be required by the injuries in question. Thus, the trial court did not abuse its discretion in refusing to make such an award.

Future Medical Expenses
Finding that Underwood would continue to use pain medication to relieve his neck pain and headaches, the trial court granted $300 for future medical expenses. Maintaining that $8,000 would be a more appropriate award, appellant argues that the lesser sum will only provide Tylenol for ten months and will not fund future visits to the doctor.
Inasmuch as medical expenses must be established with some degree of certainty, a plaintiff is required to demonstrate that such expenditures more probably than not will be incurred. Thomas, supra. Dr. Bailey, to whom Underwood last complained of neck pain in June 1991, neither expected a need for surgery nor anticipated any other treatment regarding the injuries caused by the accident. Trial testimony further attributed some of appellant's pain, and thus the need for medication, to the unrelated back problems. Hence, any possibility of future medical care is too speculative to justify an increase in the award.

Court Costs
As his last assignment, appellant complains that the judgment allotted one-third of the costs against him. LSA-C.C.P. Art. 1920 provides that the court may levy costs, or any part thereof, against any party as it may deem equitable. Thus, considering the allocation of fault, we find no abuse in the district court's assessment of costs.

Answer to the Appeal
Finally, Dunbar and Allstate have answered the appeal to seek a rewording of the judgment. By joint stipulation, all parties indicate that that portion of the formal decree pronouncing a $10,233.55 award in plaintiff's favor should be replaced with an enumeration of the various damages recognized by the court. However, in view of the district judge's well-written decision that adequately sets forth such an itemization, we discern no justification for the requested modification.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Underwood's wife also sustained injuries in the collision, but settled her claims before trial.