649 So.2d 1114 (1995)
Halley Darlene Johnson LENNARD, et vir,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 26,396-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
*1116 James M. Johnson, Campbell, Campbell & Johnson, Minden, for appellant.
Graydon K. Kitchens, III, Kitchens, Benton, Kitchens & Warren, Minden, Henry N. Bellamy, Mayer, Smith & Roberts, Shreveport, for appellee.
Before BROWN and WILLIAMS, JJ., PRICE, J. Pro. Tem.
WILLIAMS, Judge.
This is a personal injury action arising from an automobile collision. The plaintiffs, Halley Darlene Johnson Lennard and her husband, Ronald Ralph Lennard, filed this lawsuit individually and as administrators of the estates of their two minor children, Jason Scott Lennard and Justin Michael Lennard. They sued the driver of the other automobile, a minor, David S. Peterson, and his parents, David and Fran Peterson. The plaintiffs also named as defendants, the Peterson's automobile liability insurer, State Farm Mutual Automobile Insurance Company, and their own uninsured motorist carrier, Metropolitan Property & Casualty Company.
Unsatisfied with the lower court's judgment, the plaintiffs appeal the jury's assessment of fault and the award of damages as increased by the trial judge. For the reasons expressed below, we amend the judgment of the trial court, and as amended, we affirm.

*1117 FACTS
On Friday, November 9, 1990, at approximately 4:45 p.m., Peterson was driving a 1987 GMC pickup truck on U.S. Highway 79 just east of its intersection with Fincher Road in Minden, Webster Parish, Louisiana. Highway 79 is a four-lane highway known as Homer Road. It is one of Minden, Louisiana's busiest roads and, at the time of the accident, the traffic on it was very heavy.
Immediately before the accident, the inside lane of traffic traveling westbound on Homer Road was at a standstill, waiting for the left turn traffic light controlling Homer Road's intersection with Fincher Road. Peterson had just made a right turn from the northbound lane of Fincher Road into the outside eastbound lane of Homer Road. Upon turning onto Homer Road, he decided he wanted to eat at a restaurant located on the westbound side of Homer Road; so, he immediately moved into the inside eastbound lane of Homer Road. By the time he had passed the first five cars stopped in the inside westbound lane of Homer Road, he brought his truck to a stop. He activated his left turn signal and waited to make the left turn across the two lanes of westbound traffic and into the restaurant's parking lot.
Apparently, upon seeing Peterson poised to make the left turn, a phantom driver, who was driving in the inside westbound lane on Homer Road, yielded the right of way to Peterson and waved to him. After the phantom waved, Peterson began negotiating the maneuver and turned in front of the phantom. Then, just as Peterson entered the outside westbound lane, his truck was struck by Mrs. Lennard's truck, a 1989 Ford Ranger which was traveling in the outside westbound lane. Mrs. Lennard was driving her truck and her two sons were riding as passengers. As a result of the collision, the plaintiffs sued the defendants to recover for their personal injuries.
After a trial on the merits, the jury found that the accident was caused by the fault of three individuals, namely, Mrs. Lennard, the phantom driver, and Peterson. The jury assessed 15% of the fault to Mrs. Lennard, 10% of the fault to the phantom driver and the remaining 75% of the fault to Peterson. Additionally, the jury denied Mr. Lennard's loss of consortium claim and the general damage claims filed on behalf of the two children. Further, the jury awarded Mrs. Lennard $3,488.26 in special damages and only $5,000.00 in general damages. However, upon the plaintiff's motion for additur, the trial court increased Mrs. Lennard's general damage award to $15,000.00.

DISCUSSION

Allocation of Fault
The plaintiffs contend the jury erred in assessing fault to Mrs. Lennard and the phantom driver. Essentially, they argue Peterson's negligence was the sole cause of the accident and that he should have been assessed with all of the fault.
The amount of fault, if any, attributable to any party and, thus, the apportionment of it, is a question of fact to be decided by the trial court. Underwood v. Dunbar, 628 So.2d 211, 214 (La.App. 2d Cir.1993), writ denied, 94-0026 (La. 02/25/94), 632 So.2d 767. "It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong'[.]" Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted).
Before an appellate court can reverse a trial court's factual determination, not only must it be determined, that based on the record, a reasonable factual basis for the finding does not exist, but it must also be determined, that based on the record, the finding is clearly wrong or manifestly erroneous. Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993).

Mrs. Lennard's Fault
Although left turning motorists are held to a high standard of care and are burdened with a presumption of liability when involved in an accident, all motorists on Louisiana highways must drive with due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather. LSA-R.S. 32:64(A). See also Smith v. Commercial Union Ins. Co., 609 *1118 So.2d 1024, 1026 (La.App. 2d Cir.1992), writ denied, 612 So.2d 86 (La.1993); and Terro v. Casualty Reciprocal Exchange, 93-593 (La. App. 3d Cir. 02/02/94), 631 So.2d 651, writ denied, 94-0522 (La. 04/22/94), 637 So.2d 157 (citing Jones v. Lingenfelder, 537 So.2d 1275 (La.App. 2d Cir.), writ denied, 539 So.2d 631 (La.1989)). All motorists have an affirmative duty not to drive faster than is reasonable and prudent under the conditions and potential hazards existing at the time. LSA-R.S. 32:64(A).
As related above, Mrs. Lennard was driving on Homer Road in very heavy traffic. The evidence shows the sun was shining on her face. As she neared the Homer and Fincher Road intersection, the traffic in the lane to her immediate left was congested. Consequently, the risk of potential hazards existing at that time had increased.
Mrs. Lennard testified she was not applying her brake before the accident, and she also stated she may have been driving at thirty-five miles per hour which was the maximum speed limit allowed on that stretch of Homer Road. Byron David Brown, an eyewitness who testified at trial, indicated it would have been more reasonable and prudent for Mrs. Lennard to have slowed as she approached that intersection. Other evidence in the record shows that if Mrs. Lennard had driven more slowly, she possibly could have avoided the accident; Officer Jeff Cupples, the officer who investigated the accident scene, testified Mrs. Lennard had ample space on the road in which to maneuver and avoid the accident.
Considering all the circumstances in this case, we find reasonable jurors could have found Mrs. Lennard was driving at a rate of speed and in a manner that was excessive, imprudent, and a contributing cause of the accident. Therefore, based on the record, there exists a reasonable factual basis for the trial court's finding that Mrs. Lennard was at fault. Consequently, we conclude the jury's finding regarding Mrs. Lennard's negligence is not clearly wrong.
Phantom Driver's Fault
Any person who waves or signals to indicate the way is clear for a motorist to turn has a duty to exercise reasonable care in doing so. See Martin v. New Orleans Public Service, 553 So.2d 994, 995-96 (La.App. 4th Cir.1989). However, before any person can be assessed with fault for failing to exercise reasonable care in waving or signaling, the party alleging the waver's negligence must prove the following: (1) the "waver" did indeed make a signal for the motorist to cross, (2) the "waver" intended to convey that he had checked for traffic, (3) the "waver" intended to indicate that it was entirely safe to cross the street, (4) the motorist reasonably relied on the signal in decid[ing] to cross, and (5) these circumstances, taken as a whole, caused the accident. Id.
In the present case, Peterson is the party who alleged the phantom driver negligently waved him through to make the left turn, and, therefore, it was Peterson who had the burden of proof. However, as discussed below, we do not find, based on the record, a reasonable factual basis exists to show the phantom intended to convey to Peterson that he had checked for traffic or to indicate to Peterson that it was entirely safe for him to cross the street.
At trial, Peterson admitted he did not know the phantom driver. Peterson also admitted he did not know whether the phantom driver had looked to see if any oncoming traffic was approaching. Moreover, Peterson never testified that the phantom driver intended to convey he had checked for traffic or to indicate it was entirely safe to cross the highway. Instead, Peterson admitted he just took off across the highway after the phantom waved.
Brown, the eyewitness, testified that he saw the phantom waving. He stated he did not know whether the phantom had checked to see if the path was clear. Additionally, he testified he did not know what the phantom driver intended to convey or indicate other than for Peterson to make a left turn. Kelly Wade McMullen, another eyewitness to the accident, also saw the phantom driver wave. He testified he did not see the phantom driver check for traffic. He also stated that traffic was heavy at the time of the accident.
*1119 We find, in regard to the phantom's fault in waving to Peterson, the jury's finding is clearly wrong. There is no evidence in the record describing the phantom's conduct or communications with Peterson other than the evidence of the phantom driver's simple left-handed waving motion. There is no evidence in the record indicating the phantom had actually checked for traffic or intended to communicate to Peterson that it was safe to cross the highway. Without any such evidence in the record, we conclude that the jury's finding regarding the phantom driver's fault is clearly wrong. Thus, since Peterson, as the left turning motorist, is presumed to be at fault, and since he failed to meet his burden of proving the fault of the phantom driver, we amend the judgment by reallocating the phantom driver's fault (10%) to Peterson. Therefore, the total amount of fault now assessed to Peterson is 85%.

General Damages

Mrs. Lennard's Award
The plaintiffs contend the general damage award to Mrs. Lennard, although increased by additur from $5,000.00 to $15,000.00, is still grossly inadequate and, thus, contrary to the law and evidence. They claim the undisputed medical testimony shows the automobile accident either caused or aggravated a bulging disc condition in Mrs. Lennard's cervical area. The plaintiffs also cite several cases in support of their contention that the average award to women with similar injuries is $84,500.00, and they argue the award should be increased to that amount.
General damages are those that may not be fixed with pecuniary exactitude.
They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle that cannot be definitively measured in monetary terms. The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering.
Whitaker v. Mullinax, 628 So.2d 222, 230 (La.App. 2d Cir.1993), writ denied, 94-0382 (La. 03/25/94), 635 So.2d 241 (citations omitted). "In assessing damages in cases of offenses, quasi-offenses, and quasi contracts, much discretion must be left to the judge or jury. LSA-C.C. Art. 2324.1." Underwood v. Dunbar, supra at 216 (citations omitted).
In cases such as the instant case, the proper amount to award a plaintiff is not invariable and lies within a reasonable range. West v. Melancon, 507 So.2d 1250, 1251-52 (La.App. 4th Cir.), writ denied, 514 So.2d 128 (La.1987). Additur becomes proper only when, inter alia, a jury awards an amount that is lower than the lowest reasonable amount. Id., at 1252. Once additur is determined to be proper, the amount awarded should be raised only to the lowest reasonable amount. Raising the amount awarded to the highest reasonable amount is an abuse of the trial judge's discretion. Id.
In this case, we find the plaintiff's argument which assumes the award should be raised to the average amount awarded to women with similar injuries is misplaced. The issue presented is whether $15,000.00 represents the lowest amount on which reasonable minds could differ as to the proper award.
At the time of the accident, Mrs. Lennard was forty years old and, according to the expert medical testimony, more probably than not, already had an asymptomatic preexisting bulging disc condition in the base of her neck at the C-5-6 and C-6-7 levels. The medical experts testified that since Mrs. Lennard did not manifest any symptoms in her neck before the accident, the accident more than likely aggravated her neck condition and caused it to become symptomatic.
According to Mrs. Lennard, she bumped her head during the accident and, as a result, sustained a lump on her forehead and experienced a headache. She did not suffer any fractures, cuts, bruises or scars, and she never lost consciousness. While at the accident scene, Mrs. Lennard refused medical treatment and then went home. When she arrived at her home, her headache continued, so initially, she lay on a couch and relaxed. However, later that evening, she went to an emergency room and sought medical treatment.
*1120 The emergency room physician who examined Mrs. Lennard mainly felt around her neck area. The doctor did not order any x-rays, and, because prescription pain medication makes Mrs. Lennard ill, he did not prescribe any for her. Then, within one hour after arriving at the emergency room, Mrs. Lennard returned to her home. She testified that she had a difficult time sleeping that night.
The lump on Mrs. Lennard's head remained for only a few days after the accident. However, approximately one week after the accident, she began experiencing a pain in her neck. She testified that approximately two to four times each month since the accident, her neck pain has made it difficult for her to sleep. She testified, the pain comes and goes and sometimes lasts up to three days.
Mrs. Lennard admitted she has been able to play badminton since the accident, but stated that when she played the game, she worried about the possibility of causing more damage to her neck. She also said her fear of causing additional damage to her neck has caused her to stop playing volleyball with her family. Mrs. Lennard admitted she has not missed any days of work from her job at the post office on account of her neck condition. However, she testified that before the accident, she could handle thirty-pound bags of mail without difficulty, but now, because of her neck condition, she sometimes has to either get assistance with the mail bags or take the mail out of the bags in small bundles at a time, instead of lifting the whole bag by herself.
Other physical activities Mrs. Lennard has undertaken since the accident include driving her tractor on more than one occasion, lifting small children, driving a car in the reverse gear and driving forward for a long distance. However, although Mrs. Lennard is still able to do those activities, she testified that each of those activities causes her to experience additional pain. She also stated she can no longer do all of the household work she was once able to do and is now limited to doing those things which do not require her to raise her arms above her head.
The medical treatment Mrs. Lennard received for her neck condition began ten days after the accident, November 19, 1990, and ended on May 27, 1992, approximately eighteen months after the accident. She sought medical treatment from Dr. Donald Scott Brian, an orthopedic surgeon, on seven different occasions, and from Dr. Donald Smith, a neurosurgeon, once. She also received physical therapy between the dates of May 1992 and June 1992.
Dr. Brian testified at trial via videotaped deposition. He testified that on each occasion when he examined Mrs. Lennard, her neurological and sensory exams were normal. He noted Mrs. Lennard had no muscle atrophy and never required any narcotics for her pain. Dr. Brian only recommended conservative treatment for Mrs. Lennard and did not believe she needed surgery. He testified Mrs. Lennard would not be in any danger if she picked up thirty-pound bags, but admitted she does have a greater chance of developing disc problems in the future. On the last occasion when he examined Mrs. Lennard, he noted she had responded well from physical therapy and almost had a full range of motion in her neck. He never placed any restrictions on Mrs. Lennard's activities and recommended that she return to him only on an as needed basis.
Dr. Smith also testified at trial via videotaped deposition. He examined Mrs. Lennard once on October 28, 1991 at the request of Dr. Brian. On that occasion, he also found Mrs. Lennard's neurological and sensory exams to be normal. He characterized Mrs. Lennard's symptoms as mildly abnormal and did not note any objective findings other than a possible mild limitation in the range of her neck motion. He, like Dr. Brian, recommended only conservative treatment, did not believe surgery was appropriate, and did not place any restrictions on Mrs. Lennard's physical activities. In laymen's terminology, Dr. Smith characterized Mrs. Lennard's condition as "a sore neck."
Overall, Mrs. Lennard testified, her neck condition has not worsened since the accident nor has it gotten any better. She further testified that when she took Naprosyn regularly, it, like the physical therapy, helped *1121 relieve her neck pain. She also testified she has learned how to control the pain by taking either Advil or Genprin (a generic brand of Advil) and by using a heating pad. She admits there is nothing wrong with the rest of her body, and she only complains about the pain in her neck.
A review of the record shows that Mrs. Lennard has received intermittent medical attention during the course of some eighteen months and has complained of intermittent pain three years post-accident. Despite those circumstances, we find that in the instant case, $15,000.00 represents the lowest reasonable amount a jury could have awarded Mrs. Lennard. Accordingly, we conclude the jury's general damage award to Mrs. Lennard, as increased by the trial judge, is proper. Cf. Blankenship v. Champion Ins. Co., 599 So.2d 505 (La.App. 3d Cir.1992) (affirming a $7,500.00 general damage award for the painful aggravation of a preexisting neck condition that extended pain down into plaintiff's back and lasted more than a year); Underwood v. Dunbar, supra (affirming $16,000.00 general damage award for cuts and bruises to the arms, ribs and knees, and for the painful aggravation of an asymptomatic preexisting neck condition that continued in excess of two years, required eighteen months of medical attention, caused plaintiff to take Tylenol frequently and restricted many of his leisure activities); and Boulmay v. Dubois, 593 So.2d 769 (La.App. 4th Cir. 1992) (awarding $20,000.00 for the aggravation of a symptomatic preexisting neck condition which caused the victim to suffer chronic neck pain for five years after the accident and receive a physician's recommendation, later deemed too speculative, for spinal fusion surgery).

The Minor Plaintiffs' Claim
The plaintiffs also contend the jury erred in failing to award damages to Jason and Justin Lennard. They admit the two young boys were not physically injured; but, they assert the two boys were frightened by the accident. As a result of being frightened, the plaintiffs contend the boys are entitled to $1,000.00 each.
"The jurisprudence specifically provides that fright, fear or mental anguish while an ordeal is in progress is legally compensable." Butler v. Pardue, 415 So.2d 249, 252 (La.App. 2d Cir.1982) (citation omitted); LSA-C.C. 2315. Recovery may be had for mental anguish, pain and distress even though it is unaccompanied by physical injury. See Badgett v. Keith, 415 So.2d 337 (La.App. 2d Cir.1982). Said another way, claims for mental anguish or fright are separate and independent from any claims for physical pain and suffering. Smith v. Dow Chemical Co., 92-0883 (La.App. 1st Cir. 03/28/94), 635 So.2d 325, writ granted, 94-1058 (06/24/94), 641 So.2d 207; Stewart v. Select Ins. Co., 93-666 (La.App. 3d Cir. 02/02/94), 631 So.2d 599, writ denied, 94-0545 (La. 04/22/94), 637 So.2d 159; Barr v. Smith, 598 So.2d 438 (La.App. 2d Cir.), writ denied, 604 So.2d 998 (La.1992).
Whether the plaintiff is entitled to damages is a question of fact. Breaux v. Wal-Mart Stores, 93-1035 (La.App. 3d Cir. 04/06/94), 635 So.2d 667, 673, writ denied, 94-1098 (La. 06/24/94), 640 So.2d 1347. When a factual conclusion is based solely upon the credibility of witnesses, "the clearly wrong standard of review requires that great deference be afforded the trier of fact's findings." Cavalier v. Cain's Hydrostatic Testing, Inc., 93-1214 (La.App. 1st Cir. 05/20/94), 637 So.2d 724, 729. "In personal injury actions, each injury must be evaluated according to its own peculiar facts and circumstances and its effect upon the particular injured party. The plaintiff has the burden of proving damages claimed by competent evidence." Lasha v. Olin Corp., 91-459 (La.App. 3d Cir. 03/02/94), 634 So.2d 1354, 1358 (citations omitted).
In the instant case, at the time of the accident, Jason was a thirteen-year-old boy in the seventh grade, and Justin was a twelve-year-old in the fifth grade. Both boys testified at trial, and each said the accident frightened them. In addition to their testimony, their mother, Mrs. Lennard, testified both boys "appeared to be shook up" on the day of the accident and, Justin "seemed to be a little frightened for a short period of time."
We note Mrs. Lennard did not conclusively say that the boys were frightened. She merely stated the boys "appeared" or "seemed" frightened on the day of the accident. *1122 Even the boys admitted they did not experience any difficulties as a result of the accident. Moreover, the record does not contain any objective evidence showing that, as a result of being frightened, the boys required medical attention or had any residual psychological problems such as crying, nightmares, or any difficulty sleeping. We further note that although the defendants did not introduce any evidence tending to contradict the plaintiffs' evidence or to prove Justin and Jason were not frightened, they did not have that burden of proof. Rather, it was the plaintiffs who were burdened with proving Justin and Jason suffered a compensable injury.
In attempting to meet their burden, the plaintiffs relied solely upon their self-serving testimony; they did not introduce any objective evidence to prove Justin's and Jason's fright or mental trauma. As such, the jury's conclusion as to whether Justin and Jason were frightened was based upon the plaintiffs' credibility as witnesses and is entitled to great deference. In concluding Justin and Jason Lennard did not suffer mental anguish or fright as a result of the collision, the jury necessarily chose not to credit the plaintiffs' testimony. Following the instructions of the supreme court, we must afford great deference to the jury because it is in the best position to evaluate Justin's, Jason's and Mrs. Lennard's demeanor and tone of voice. Without their testimony, there is no further evidence in the record to support the claim for mental anguish. Accordingly, we find no error in the jury's finding that the minors were not entitled to damages for mental anguish or fright as a result of the collision.

Loss of Consortium.
Finally, the plaintiffs contend the jury erred in failing to award damages to Mr. Lennard for his loss of consortium. They contend Mr. Lennard is entitled to $5,000.00 for his suffering.
The jury's conclusion regarding loss of consortium is an issue of fact which cannot be disturbed on appeal unless "clearly wrong." Cavalier v. Cain's Hydrostatic Testing, Inc., supra. "[A] claim for loss of consortium is broken down into several components[.]" Whitaker v. Mullinax, supra. "`Society' includes loss of love, companionship and affection that a spouse loses as a result of an injury to the other spouse. `Service' is the uncompensated work around the house or educational help with the children which presumably will, as a result of the injury, have to be obtained from another source and at a price." Spangler v. North Star Drilling Co. 552 So.2d 673, 684 (La.App. 2d Cir.1989) (citations omitted). Also included among the components of a claim of loss of consortium are sexual relations and the right of support. Whitaker v. Mullinax, supra. "Proof of any of these elements is sufficient for an award of consortium. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir. 1985)." Whitaker v. Mullinax, supra.
Regarding the "society" component of this claim, both Mr. and Mrs. Lennard testified that, due to Mrs. Lennard's love affair with another man, they were having marital problems before the accident. However, since the accident, Mrs. Lennard's affair has ended and the two of them have put their marital problems aside. Both Mr. and Mrs. Lennard testified that their marriage is now better and stronger than it was before the accident.
Regarding the "service" component of this claim, we note, as we did above, Mrs. Lennard has not been placed under any physical restrictions by her doctors. Mr. Lennard testified that within three days after the accident, his wife was physically able to complete all of her household chores except those requiring her to reach above her head, such as changing light bulbs. Also, Mrs. Lennard admitted she can still perform household maintenance, shop for groceries, make the bed, cook and take the kids to school. Further, both Mr. and Mrs. Lennard admitted they have not had to hire any outside help because of the accident.
Regarding the "sexual relations" component of this claim, Mr. and Mrs. Lennard testified that it was the accident and not Mrs. Lennard's affair that decreased Mrs. Lennard's ability to have sex with Mr. Lennard. However, Mr. Lennard admitted his sexual activity had decreased before the accident and acknowledged the possibility that he and his wife had a preexisting sexual problem. *1123 Additionally, Mrs. Lennard admitted that the accident never totally prevented her from having sex with Mr. Lennard.
Regarding the "right of support" component of Mr. Lennard's loss of consortium claim, both Mr. and Mrs. Lennard testified that Mrs. Lennard's ability to work at the post office was not impaired by the accident. Also, Mrs. Lennard has not missed a day of work as a result of the accident.
Based upon the evidence presented at trial, we conclude the jury's finding that Mr. Lennard had no loss of consortium because of this automobile accident was reasonable. Accordingly, we find no error in the jury's rejection of Mr. Lennard's claim.

CONCLUSION
For the foregoing reasons, we amend the trial court's judgment to reflect that David S. Peterson is 85% at fault and the phantom driver is 0% at fault. In all other respects, the trial court's judgment is affirmed. Costs of appeal are assessed 50% to plaintiffs and 50% to defendants David Peterson, Fran Peterson and State Farm Mutual Automobile Insurance Company.
AMENDED, AND AFFIRMED AS AMENDED.