280 F.2d 49
 Alberto Mueller MASCARENAS, Automobile Carriers, Inc. and Burt Beveridge, trading and doing business as Beveridge Land & Cattle Company, Appellants,
v.
Carol JOHNSON, Appellee.
 No. 18119.
 United States Court of Appeals Fifth Circuit.
 June 30, 1960.
 
 R. Bruce Jones, West Palm Beach, Fla., Jones, Adams, Paine & Foster, West Palm Beach, Fla., for appellants.
 Al J. Cone, A. Kenneth Pincourt, Jr., West Palm Beach, Fla., Miller, Cone, Owen, Wagner & Nugent, West Palm Beach, Fla., for appellee.
 Before RIVES, Chief Judge, and JONES and WISDOM, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 The appellee, who was plaintiff in the district court, was a guest in a borrowed automobile and was injured when the car went off the pavement of a city street in Palm Beach, Florida, and struck a tree. She recovered judgment against the driver and the owners of the car and they have appealed. The Florida statute[1] denies recovery to a guest injured in an automobile accident unless the injury was caused by gross negligence or willful and wanton misconduct of the owner or operator of the vehicle.
 
 
 2
 The only one of the witnesses at the trial who was present when the accident happened was the plaintiff. In her testimony it was recited that she arrived in Palm Beach from her home in New York on March 8, 1958. Around two-thirty or three o'clock in the afternoon she was at the Polo Club with the defendant Alberto Mueller Mascarenas and his brother Julio. Then or thereafter they were joined by another man whose role was an inactive one in the events leading to this litigation. Also of no interest here were the activities of the two other young women who were added to the group around five-thirty or six o'clock. The three couples had a cocktail apiece and dinner with wine. They returned to the Polo Club about nine or nine-thirty. A dance was in progress and those of the group participated. The plaintiff did not know how many drinks she or the others of the party had over the course of the evening but estimated it was four or five. She was asked on cross-examination when she formed her estimate and her answer was that she knew how she drank socially and that would be approximately how many she would have. The plaintiff had given a deposition about five and a half months after the accident and about nine months before the trial, in which she said the number of drinks could have been two or twenty.
 
 
 3
 The plaintiff testified that they took the other girls home about one-thirty or two o'clock in the morning, after which the others went to the Alibi Club where they had one or two drinks. Up to this time the car had been driven by Julio. On leaving the Alibi Club Alberto started driving. They were taking the plaintiff home. It seems that Alberto, Julio and the plaintiff were in the front seat with the plaintiff between the two brothers. In her testimony as given at the trial she stated that she was talking to Julio on her right and looking out of the window when, by reason of her instinct as a driver, she noticed an increase in speed which, because she drove a car herself, she was able to estimate at approximately thirty-five to forty miles per hour. She then felt something across her lap and, she testified, she "looked down and it was the driver's arm reaching to the right, and he was looking to the right and down." He was, she said, "looking down to the floor on the right hand side of the car." Her recollection at the time she gave the deposition, to which her attention was called on cross-examination, was that Alberto had been driving at the same speed, and her testimony on the deposition was that while she was looking at the scenery she felt Alberto hit her leg reaching over in front of her, but without any reference to his looking to the right and down. The incident of the driver reaching was followed by the crash of the car into the tree and the plaintiff became unconscious. The plaintiff testified that she could see nothing that indicated that Alberto was intoxicated.
 
 
 4
 Police Officer Hannah was called to the scene of the accident at 4:42 A.M. He found skid marks forty feet in length showing the car to have been at a forty-five degree angle when it hit the tree. A doctor, whose specialized skills were not shown, gave opinion testimony as to the effect of four or five drinks during a period from 5:00 P.M. until 3:00 A.M. But, upon questioning by the court, the admission was made that the effect of the drinks would depend upon the individual, and laboratory tests would be necessary and that he, the doctor, couldn't say in any one case what the effect would be.
 
 
 5
 A motion of the defendants for a directed verdict was made and denied, and the ruling is specified as error. The court instructed the jury that intoxication was out both as gross negligence of the driver and as contributory negligence of the plaintiff. Part of the instruction was:
 
 
 6
 "There is no question about intoxication in this case.
 
 
 7
 "They haven't made any case at all on that score nor have they made any case on contributory negligence which was one of the defenses based upon the circumstances that had there been intoxication then she might well be guilty of contributory negligence in getting into a car with anybody who was under the influence of alcohol. That is out, so forget those two items."
 
 
 8
 Error is assigned in the taking away by the court from the jury the issue of whether the faculties of the driver were impaired by the consumption of alcohol. The record does not show any objection to the instruction as given but, on the other hand, it is not shown that any opportunity was afforded for making an objection. The record does show that the defendants requested and the court refused an instruction that if the plaintiff knew or should have known that the driver was under the influence of liquor she could not recover. The failure to give the instruction is assigned as a ground in the motion for a new trial and the denial of the motion is specified as error.
 
 
 9
 Under the Florida law, recovery may not be had under the so-called "guest statute" by a guest passenger who voluntarily rides with one who is not a safe driver by reason of having imbibed too much. Henley v. Carter, Fla., 63 So.2d 192, 44 A.L.R.2d 1339; Herring v. Eiland, Fla., 81 So.2d 645; Alpert, Florida Automobile Law 158, § 89.
 
 
 10
 The district court did not permit the jury to consider the defense asserting that the plaintiff was guilty of contributory negligence by becoming and remaining a voluntary passenger in a car where the faculties of the driver were, or should have been known by her to be impaired by the consumption of alcohol. We think this was error. The plaintiff, the driver, and others had been together for about twelve hours during the afternoon and night. During this time whiskey and wine had been consumed. The amount was estimated by the plaintiff and her recollection was based upon her approximation as to how many she would have as a social drinker. She had said, in her deposition, that the number of drinks "could have been two or twenty." One or two drinks were taken only a few minutes before the plaintiff received her injuries. Just as the car left the road the plaintiff felt something strike her leg. She then found the driver's arm reaching over her lap with the driver looking down to his right. This incident was not too well described. The plaintiff did not know why the driver did as he did and no other explanation was attempted.
 
 
 11
 This happening, as related by the plaintiff, was not normal conduct. We think the jury, entrusted with the solution of the question of the cause of plaintiff's injuries, was entitled to consider whether or not this unusual occurrence might not have resulted from the intoxicants consumed by the driver. If so, then the jury should have been permitted to consider whether the driver's condition was such that the plaintiff knew or should have known of it. Such a conclusion might conflict with some of the estimates, conjectures and opinions appearing in the plaintiff's testimony. Such a finding might be contrary to her estimate of the number of drinks taken by the driver of the car or their apparent effect or lack of effect upon him. The absence of testimony of other witnesses does not preclude the jury from considering the probative effect of her statements. Credibility is within the exclusive province of the jury. The interest of the witness, especially when coupled with testimony as to physical acts or occurrences, may be taken into consideration in arriving at the weight to be given to testimony. Central Truck Lines v. Lott, 5 Cir., 1957, 249 F.2d 722; Heitman v. Davis, 127 Fla. 1, 172 So. 705; 4 Jones, Evidence, 5th Ed.1865, § 991.
 
 
 12
 In order that there may be a new trial with the defense of contributory negligence submitted to a jury, the judgment of the district court will be reversed and the cause remanded for a new trial. We do not think that the trial court committed error in not granting the motion of the appellants for a directed verdict on the ground that, as a matter of law, the plaintiff was guilty of contributory negligence and assumed the risk of riding in the appellants' car.
 
 
 13
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 "No person transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such gross negligence or willful and wanton misconduct was the proximate cause of the injury, death or loss for which the action is brought; provided, that the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue or question of assumed risk, shall in all such cases be solely for the jury; * * *." Fla.Stat.1959 § 320.59, F.S.A