HENDRY, Chief Judge.
This is an appeal by defendants from a judgment entered on a jury verdict in favor of the plaintiff, as executrix, in the sum of $501 and for the plaintiff, a widow, in the sum of $86,000 against both defendants in actions which were consolidated for purposes of trial and appeal.
The action arose out of a collision at a railroad crossing between defendant, Florida East Coast Railway Company, and a car owned by defendant, Broward Auto Rental, Inc. The plaintiff sued both defendants in her own right for the wrongful death of her husband, who was a passenger in the automobile, and as executrix of the decedent’s estate under the survival statute.
On November 30, 1962, Ronald E. Keilen, a twenty-four year old soldier was killed instantly in a car-train collision in Fort Lauderdale. Keilen was riding as a passenger in a car which had been rented by the driver, a fellow soldier named Charles O. Rouse, from Broward Auto Rental, Inc. A third soldier, Charles E. Houston, was riding in the rear seat of the 1962 Chevy II automobile.
The collision occurred as the three soldiers were returning to their quarters at the old Broward County Airport. They had left their quarters on the morning of November 30, 1962, in order to cash their paychecks at the Hollywood Federal Bank in Dania. They were members of a boat company which had been transported from Fort Eustis, Virginia, to Port Everglades. After cashing their checks, they went to the port where their boat was tied up, in order to secure some of their personal effects. While there, they were informed by an officer that they were required to report back to duty. It was clear and sunny on their way back to the airport. At approximately 1:30 P.M., Rouse turned right off Andrews Avenue onto S.W. 33rd Street in a westerly direction. Seven Florida East Coast railroad tracks intersect 33rd Street just west of Andrews Avenue. The crossing is guarded by automatic bells, lights and warning gates. The car accelerated to a high rate of speed as it approached the crossing, hit and broke the warning gate, proceeded into the crossing and over four tracks, then struck a southbound train on the fifth track. As a result of the collision, Keilen was killed; Houston injured; and Rouse rendered a mental incompetent who could not testify at the trial.
The defendant-railroad contends it was error for the lower court to deny its motion for a directed verdict on the ground that there was no competent evidence upon which the jury could find the railroad guilty of negligence. The plaintiff contends that the evidence presented a jury question on whether the railroad was guilty of simple negligence, which was a proximate cause of the accident, because of the failure of the gate at the crossing to operate in time to give adequate warning of the approach of the train.
The plaintiff presented evidence to show that the gate had hit the roof of the automobile. Plouston, who was in the rear seat, testified that although he had not noticed the position of the gate he did remember hearing a sound such as that made by wood against metal on the top of the car just prior to the collision. An expert in the analysis of physical evidence testified that he had compared paint samples from the gate with those found on the automobile and determined that the gate had come into contact with the roof of the car. He also determined that if the gate had been down before it was struck, it would initially have come in contact with the windshield area of the car. However, he was unable to say whether or not the gate had come into *549 contact with the windshield as it was missing when he examined the car. Based on the foregoing evidence, the plaintiff would have the jury infer that the gate initially struck the roof of the car which would indicate that it was being lowered as the car entered the crossing, thus, too late to give an adequate warning.
There were many witnesses in the general area at the time of the collision. The testimony revealed without contradiction that the whistle on the train was blowing, the bells on the train and at the crossing were ringing, and the lights flashing on the gate prior to the entrance of the car into the crossing. In addition, a witness who had stopped his car on the opposite side of the crossing testified that he observed the car crash into the gate after it was down. He noted that the gate then flew apart, went up in a circular motion and came down. The train’s engineer testified to the same sequence of events along with another witness who observed the gate fly up after it was struck by the car, then come down as fast as it went up. The railroad contends that the evidence proves that the gate was down before it was hit by the car, then it flew up and came down on the roof of the car.
It is apparent that there is no material conflict in the evidence adduced at the trial. The plaintiff has produced no evidence to show that the sequence of events was anything other than that presented by the railroad. The undisputed facts show that there was no negligence on the part of the railroad. It was therefore the duty of the trial court to take the case from the jury and direct a verdict for the defendant-railroad.[1]
The defendant, Broward Auto Rental, Inc., has raised two points on this appeal. The first is whether the trial court erred in denying its motion for a new trial where the proceedings included numerous rulings which it contends were erroneous. We have found that none of the rulings challenged were erroneous and, therefore, the trial court was correct in denying the defendant’s motion for a new trial.
The second point is whether the trial court erred in denying its motion for a directed verdict where the deceased assumed the risk incident to his transportation as a guest passenger, and was also guilty of contributory negligence. This argument is based on the fact that the evidence adduced at trial not only established the fact that the automobile driver was guilty of gross negligence, but that the negligence was so gross, wilful and wanton that, of necessity, the deceased must be guilty of contributory negligence and assumption of risk as a matter of law.
There was testimony that just prior to the collision the automobile was going too fast around the corner of Andrews Avenue, accelerated up 33rd Street, and appeared to be racing the train to the crossing. Prior to that, the car was observed making wide sweeping turns and running a stop sign. The car at one point went off the wrong side of the road. When questioned about this, Houston said that he had assumed the driver had dodged a dog and slipped off the road. One wheel was stuck in the sand, and Houston and the deceased were unable to push the car back on the road. A witness who assisted the soldiers at this point testified that they were cutting-up, a little horseplay along with it and he could tell that the two of them felt pretty good. Houston stated that he and the deceased had one drink of whiskey early in the morning but that the driver had had nothing to drink. Houston also testified that the deceased made no effort to protest the manner in which the car was being driven.
Generally, a guest riding in an automobile is entitled to trust the vigilance and skill of the driver and the driver’s neg *550 ligence is not imputable to the guest.[2] An exception to this general rule has developed in Florida which imposes a duty upon the guest to make a reasonable attempt, suitable to the occasion, to rectify the conduct of the driver whom he knows or by the exercise of ordinary and reasonable care should know is not exercising that degree of care in the operation of the vehicle compatible with the guest’s safety. Fie must know, or have reason to know, that such action is reasonably essential to his own safety and there must be sufficient time and opportunity to give warning or make protest before the happening of the accident.[3]
The auto rental company asserts that the case most directly on point is Loftin v. Bryan, Fla.1953, 63 So.2d 310, wherein the Supreme Court found that the lower court should have directed a verdict in favor of the defendant. In the Loftin case, the occupants of the car were determined to be jointly on a wild party and, therefore, more than mere guests. The auto rental company has not argued that the deceased was anything but a mere guest, and the facts do not suggest that the above case is applicable. Nor is there evidence to support the contention that the driver had been drinking to an extent which would preclude recovery by a voluntary guest; yet, even if there were some evidence that the driver had been drinking, the question of its effect on the issue before us would be for the jury.[4]
We have determined that reasonable men could differ in concluding whether the actions of the driver at any time during the ride were such as to place a duty upon the deceased to protest, and, if so, whether he had the time and opportunity to protest.[5] Therefore, we hold that the question was properly submitted to the jury.[6] Having found that the lower court erred in denying the railroad’s motion for directed verdict, and that no error was shown in the denial of the auto rental company’s motions, the judgment appealed from is reversed as to the Florida East Coast Railway Company and affirmed as to Broward Auto Rental, Inc.
Affirmed in part, reversed in part.

. Hickory House v. Brown, Fla.1955, 77 So.2d 249; Fields v. Quillian, Fla.1954, 74 So.2d 230.

. Porter v. Jacksonville Electric Co., 64 Fla. 409, 60 So. 188 (1912); Dubov v. Ropes, Fla.App.1960, 124 So.2d 34.

. Bessett v. Hackett, Fla.1953, 66 So.2d 694; Knudson v. Hanlan, 160 Fla. 566, 36 So.2d 192 (1948).

. Mascarenas v. Johnson, 280 F.2d 49 (5th Cir. 1960); Herring v. Eiland, Fla. 1955, 81 So.2d 645; Henley v. Carter, Fla.1953, 63 So.2d 192, 44 A.L.R.2d 1339; Smart v. Masker, Pla.App.1959, 113 So. 2d 414.

. Bessett v. Hackett, Supra note 3.

. Douglass v. Galvin, Fla.App.1961, 130 So.2d 282.