WOLF, Judge.
Appellant, WED Transportation Systems, Inc. (WED), challenges a final judgment entered in a third-party action determining that WED was responsible for contribution to appellees Yvette Neary (Neary) and Alamo Rent-A-Car (Alamo).[1] Appellant raises several issues concerning the final judgment. The first two concern whether a driver of a large commercial vehicle who signals an oncoming driver to turn in front of him owes a duty to reasonably ascertain whether other traffic lanes will safely accommodate the turning driver. The appellant also argues that it is entitled to a new trial on the ground that the jury was unduly influenced by matters outside the record. We find that appellant has failed to demonstrate that the jury was influenced by matters outside the record and affirm as to that issue without further comment. Appellant urges us to hold as a matter of law that a signaling driver never has a duty to ascertain whether there are cars approaching from the rear which may present a danger to the turning vehicle or, in the alternative, that the evidence presented did not support a jury determination that the employee driving appellant’s vehicle was in a position to observe oncoming traffic in his rear-view mirror. We reject both contentions, and affirm.
On November 6, 1988, appellee, Yvette Neary, was driving an Alamo rental car south on a four-lane road running through the Walt Disney hotel district in Lake Bue-na Vista. Neary came to a stop in the left through-traffic lane (not a special left-turn lane) at an intersection, intending to make a left turn into a hotel driveway. Neary waited for traffic in the northbound lanes to pass so she could make the left turn. As she waited, a bus operated by appellant, WED Transportation Systems approached northbound, stopping in the left through-traffic lane (not a special left-turn lane) of the intersection. The bus driver signaled his intention to turn left. The exact position of the bus was subject to conflicting testimony at trial.
According to Ms. Neary, the bus was aligned straight in the northbound left lane prior to signaling. According to Ms. Beau-champ (the driver who ultimately collided with Ms. Neary), however, the bus was at an angle immediately prior to the accident. Both witnesses utilized a model to demonstrate the position of the bus immediately prior to the accident. This court has no way of ascertaining how the witnesses positioned the bus using the model. The actual alignment of the bus is important because of the testimony of the expert witness that a bus equipped with the legally required rear-view mirrors positioned straight rather than at an angle in the intersection could see vehicles coming up from 500 feet behind. The particular bus and bus driver involved in the accident in this case could not be identified, as the driver of the bus left the scene of the accident. A representative of WED, however, testified that all the buses were equipped with the appropriate mirrors required by law.
*148 Ms. Neary’s 16-year-old-son, Bryan, testified that the bus driver “was waving” at his mom to proceed with her left turn, and that his mom “was looking in every possible direction.” Becoming a bit impatient, Bryan told his mother three or four times, “He’s waving you by.” Ms. Neary testified that “it made sense for him to wave me through ... I was parked in an area that the bus could not have made his left turn without hitting me.” Ms. Neary then made a left turn, proceeding through the intersection, and collided with a vehicle traveling in the outside northbound lane, driven by appellee, Beauchamp.
After trial, the jury returned a verdict in favor of appellee, Beauchamp, who was found zero percent negligent. Total damages were $409,800. On the third-party claim, the jury found appellees, Neary and Alamo, 60 percent negligent, and WED 40 percent negligent. Appellant challenges the determination that it is responsible for 40 percent of the judgment in favor of Ms. Beauchamp.
In Kerfoot v. Waychoff 501 So.2d 588 (Fla.1987), the supreme court approved an opinion of the fourth district affirming a directed verdict in favor of a driver of a passenger vehicle who motioned for another car to make a left turn in front of him. The court specifically stated, however, that “our decision is limited to the factual circumstances of this case,” and that the holding in that case “is limited to its circumstances and should not be broadly construed to hold that drivers who give gratuitous signals to other drivers can’t be guilty of negligence.” Id. at 590. It appears that the most prevalent factor in the court’s determination of no liability in Ker-foot was that “the signaling driver, Sever-sen, was in an almost impossible position to determine if the adjacent lane was clear of motor vehicles.” Id. at 589. The court went on to cite with approval the following quote from the Virginia Supreme Court: “[T]he signaler’s ability to foresee potential danger is a factor giving meaning to a signal. Where a driver is not in a position to ascertain whether the person receiving the signal may safely proceed, it is unreasonable to conclude that the driver’s gestures are a signal that it is safe to proceed.” Id. at 590 (emphasis added) (quoting Nolde Bros., Inc. v. Wray, 221 Va. 25, 28, 266 S.E.2d 882, 884 (1980)). It appears that factors such as height of the vehicle and placement of dual side mirrors, which would enhance the signaler’s ability to observe traffic coming from the rear, would be important to the supreme court’s determination of potential liability. In Tellechea v. Coca Cola Bottling Co. of Miami Inc., 530 So.2d 1083 (Fla. 3d DCA 1988), the third district read Kerfoot to require evidence showing that the signaling driver was in a position to determine whether the adjacent lane was clear of motor vehicles; if no such evidence was adduced, the case was not one submissible for jury consideration. Id. at 1084. In Telleehea, as in the instant case, the driver of a large commercial vehicle equipped with side mirrors was the signaling driver. The size of the vehicle is pertinent because it not only affects the signaler’s ability to ascertain dangers, but also it affects the ability of the turning driver to observe oncoming cars. In such a case, the duty arises because of the greater ability of the driver of the commercial vehicle to ascertain dangerous conditions. As in Telleehea, genuine issues of fact are presented in this case concerning the signaler’s ability to ascertain potential danger and the reasonableness of the driver of the turning vehicle relying on the driver of the signaling vehicle. While there is conflicting evidence concerning the position of the bus and, thus, the driver’s ability to observe the oncoming traffic, such conflicts should be resolved by the jury. Elmowitz v. Zimmerman Revocable Trust, 610 So.2d 52 (Fla. 3d DCA 1992).
We, therefore, reject appellant’s argument and affirm.
ERVIN, J., concurs.
MINER, J., dissents with written opinion.

. Appellant also challenges two orders taxing costs, but since these issues were not properly presented as issues on appeal in the initial brief, and they were not raised until the conclusion of the initial brief, they will not be considered by this court on appeal.