771 So.2d 109 (2000)
Lawrence JAGNEAUX, Jr. and Arlene Jagneaux
v.
LOUISIANA FARM BUREAU CASUALTY INSURANCE CO., et al.
No. 99-1697.
Court of Appeal of Louisiana, Third Circuit.
July 12, 2000.
*110 Thomas J. DeJean, DeJean, DeJean, Leger & Mouret, Opelousas, Louisiana, Counsel for Plaintiff/Appellant.
Paul L. Veazey, Jr., Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, Louisiana, Mr. Frank M. Walker, Jr., Plauche, Smith & Nieset, Lake Charles, Louisiana, Counsel for Defendants/Appellees.
Mr. Stephen Berniard, Jr., Raggio, Cappel, Chozen & Berniard, Lake Charles, Louisiana, Counsel for Defendant/Appellee.
(Court composed of OSWALD A. DECUIR, MICHAEL G. SULLIVAN, and GLENN B. GREMILLION, Judges.)
SULLIVAN, Judge.
This case arises out of an accident between a tractor and a van in rural Jefferson Davis Parish. The occupants of the van, Lawrence and Arlene Jagneaux, appeal the dismissal on summary judgment of a passenger in the tractor, who allegedly improperly signaled to the tractor driver that it was safe to proceed through an intersection.

Facts
On April 4, 1997, fifteen-year-old Jeremy Byrne was operating a single-seat, enclosed-cab tractor (with plow in tow) while his friend, Chris Edwards, fourteen, sat on the lefthand armrest. As the tractor traveled along a wet, unpaved road, its tires began spewing mud and dirt, eventually obstructing the views from both side windows. When the teenagers reached the stop sign at an intersection with a state highway, Jeremy asked Chris to check for traffic. Chris opened the door and stepped out of the cab onto the tractor's diesel tank to get a better view of the road. He signaled to Jeremy, but what that signal meant and Jeremy's understanding of it are in dispute. The result is that Jeremy entered the intersection before it was safe to do so and collided with the Jagneauxs' van.
The Jagneauxs sued Jeremy's and Chris's fathers, their insurers, and the manufacturer of the tractor. Jeremy's representatives settled with the Jagneauxs, but the trial court dismissed Chris's on summary judgment, after concluding that Chris did not breach any duties owed by a guest passenger. On appeal, the Jagneauxs argue the trial court erred in improperly weighing Jeremy's and Chris's conflicting testimony and in failing to recognize that Chris undertook a duty beyond that of a guest passenger.

Discussion
Appellate courts review summary judgments de novo, applying the same criteria as the trial court in deciding whether or not summary judgment should be granted. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Although summary judgments are now favored, the mover must still show the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.
In support of their motion for summary judgment, Chris's father, Barry Edwards, and his insurer, State Farm Fire and Casualty Company, introduced the depositions of the two boys and an excerpt from Mr. Jagneaux's deposition.
Chris testified that he opened the cab door, looked to the left and said, "It's clear on this side," but before he could climb higher to see over the cab to the right, he felt the tractor move forward. He then *111 got back in the cab and asked Jeremy, "What are you doing?" Jeremy said, "You said it's clear," and Chris replied, "No, I said it was clear on this side." Chris then instinctively turned around to look out of the back window and the accident happened. According to Chris, Jeremy later said, "I must have misunderstood you." Chris also testified: "He might have misunderstood me and heard that it was clear, plus I was talking away from him."
Jeremy testified that he did not remember Chris's exact words, but that he went forward because he understood, "You can go." He remembered Chris standing up on the diesel tank and then coming back in the cab. Although Chris was not sitting all the way down when he started moving forward, he did wait until Chris shut the cab door before he advanced. He thought Chris had come back into the cab to sit down, and he did not believe that Chris was still looking for traffic: "As far as I was concerned, he was finished." According to Jeremy, Chris never tried to stop him from going forward. Jeremy testified that he relied on Chris to check for traffic in both directions and that he did not remember Chris saying, "What are you doing?" or himself replying, "You told me it was okay to go." Although Jeremy said that he could not "contradict" Chris if Chris testified otherwise, Jeremy also testified that he would have remembered if Chris said these things and that Chris never blamed him for the accident.
In his deposition, Mr. Jagneaux testified that a policeman at the scene told him that the passenger left the tractor, looked to the north then signaled to the driver, who understood it to be an "all-clear" sign.
As the driver stopped at a stop sign, Jeremy had the duty to "yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard." La.R.S. 32:123(B). If the Jagneauxs contend that Chris negligently signaled for Jeremy to enter the intersection, they must prove the following as set out in Lennard v. State Farm Mutual Automobile Insurance Co., 26,396, p. 4 (La.App. 2 Cir. 1/25/95); 649 So.2d 1114, 1118 (emphasis added):

Any person who waves or signals to indicate the way is clear for a motorist to turn has a duty to exercise reasonable care in doing so. See Martin v. New Orleans Public Service, 553 So.2d 994, 995-96 (La.App. 4th Cir.1989). However, before any person can be assessed with fault for failing to exercise reasonable care in waving or signaling, the party alleging the waver's negligence must prove the following: (1) the "waver" did indeed make a signal for the motorist to cross, (2) the "waver" intended to convey that he had checked for traffic, (3) the "waver" intended to indicate that it was entirely safe to cross the street, (4) the motorist reasonably relied on the signal in decid[ing] to cross, and (5) these circumstances, taken as a whole, caused the accident. Id.

In Lennard, the "waving" driver was a "phantom"; thus the driver relying on the "waver" was not in a position to know if the "phantom" had looked for traffic or intended to signal that it was clear. The court considered these factors in reversing a jury's assessment of fault to the "phantom waver":
At trial, Peterson admitted he did not know the phantom driver. Peterson also admitted he did not know whether the phantom driver had looked to see if any oncoming traffic was approaching. Moreover, Peterson never testified that the phantom driver intended to convey he had checked for traffic or to indicate it was entirely safe to cross the highway....
. . . .
We find, in regard to the phantom's fault in waving to Peterson, the jury's finding is clearly wrong. There is no evidence in the record describing the phantom's conduct or communications *112 with Peterson other than the evidence of the phantom driver's simple left-handed waving motion. There is no evidence in the record indicating the phantom had actually checked for traffic or intended to communicate to Peterson that it was safe to cross the highway. Without any such evidence in the record, we conclude that the jury's finding regarding the phantom driver's fault is clearly wrong.
Id. at 1118-19 (emphasis added).
In the present case, Chris was not a "phantom waver." He was known to Jeremy, and the record contains testimony regarding his actions and what he intended to communicate. Movers for summary judgment argue that the boys' versions of the accident are not in conflict because Jeremy said he could not "contradict" Chris's testimony about what was said and because Jeremy admitted he may have "misunderstood" Chris. However, we find the teenagers' accounts differ on one key point. Chris testified that he got back into the cab because he felt the tractor move forward, but Jeremy testified that he waited until Chris shut the cab door before he began to advance. Whether Jeremy proceeded forward before or after Chris began entering the cab is relevant to at least three of the factors in Lennard: whether Chris, in fact, signaled for Jeremy to proceed; whether Chris intended to convey that he had checked for traffic; and whether Chris intended to communicate that it was safe to cross the street.
In granting summary judgment, the trial court expressed concern that every guest passenger in an accident would face liability if this case were allowed to proceed. However, we agree with the Jagneauxs that Chris was acting beyond the role of a guest passenger when he assumed the duty of checking for traffic. We further find the evidence does conflict as to whether Chris exercised reasonable care in assuming that duty. As stated in Citizens Bank & Trust Co. v. Mitchell, 31,435, pp. 4-5 (La.App. 2 Cir. 1/20/99); 727 So.2d 661, 664: "Even under the more liberalized summary judgment law, however, summary judgment may not be granted when the supporting and opposing documents reveal conflicting versions of the facts which may only be resolved by weighing contradictory testimony and assessing witness credibility."

Decree
For the above reasons, the judgment of the trial court is reversed, and the case is remanded for proceedings consistent with this opinion. Costs of this appeal are assessed to Appellees, Barry Edwards and State Farm Fire and Casualty Company.
REVERSED AND REMANDED.