913 So.2d 59 (2005)
Eleonora Bianca ROOS, Appellant,
v.
Christopher MORRISON, Appellee.
No. 1D04-1763.
District Court of Appeal of Florida, First District.
September 28, 2005.
Rehearing Denied November 2, 2005.
*61 Thomas E. Duffy, Jr., of Brown, Terrell, Hogan, Ellis, McClamma and Yegelwel, P.A., Jacksonville, for appellant.
Tracy Synan and J. Stephen O'Hara, Jr., of O'Hara Spradley, P.A., Jacksonville, for appellee.
*62 WOLF, J.
Eleonora Bianca Roos challenges a final order dismissing with prejudice her amended complaint for damages against Christopher Morrison for injuries sustained by Roos when the motorcycle upon which she was a passenger was struck by a sport utility vehicle (SUV) in which Morrison was a passenger. The issue before us is whether a vehicular passenger may be held liable to another vehicular passenger in circumstances where the potentially liable passenger was in a superior position to the driver of that passenger's vehicle to observe a potential hazard and gave affirmative advice to the driver which resulted in a collision with the other passenger's vehicle. We determine that a legal duty exists under these circumstances pursuant to the dictates of McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), and we reverse. This, however, is a case of first impression and involves important policy issues regarding liability and insurance coverage. We, therefore, certify a question of great public importance.
Appellant's amended complaint alleged as follows:
2. On or about July 4, 2002, at approximately 1:35 a.m., plaintiff was a passenger on a motorcycle operated by Murat Demir on Third Avenue North near its intersection with Second Street in Jacksonville Beach, Duval County, Florida.
3. Mr. Demir stopped his motorcycle a safe distance behind a Chevrolet Tahoe sport utility vehicle which was being driven by Barret Charles Eubanks.
4. Mr. Eubanks was stopped because of traffic which was blocked ahead of him.
5. Defendant, Christopher Morrison, was a rear seat passenger in the vehicle driven by Barret Eubanks.
6. After waiting for a while for traffic to clear, Mr. Eubanks requested that Defendant Morrison turn around in his seat and see if the roadway behind Mr. Eubanks' vehicle was clear so that he could back up his vehicle.
7. Alternatively, without being requested to, Defendant Morrison realized Mr. Eubanks was having difficulty seeing if anything was behind him so Defendant Morrison gratuitously turned around in his seat to see if the roadway behind Mr. Eubanks' vehicle was clear so that he could back up.
8. Defendant Morrison was in a superior position than was Mr. Eubanks to see what was behind Mr. Eubanks' vehicle.
9. Both Barret Charles Eubanks and Defendant Morrison believed that Defendant Morrison was in a much better position to see if Mr. Eubanks could safely back up than Mr. Eubanks was.
10. Mr. Eubanks could not see whether his intended path of travel behind him was clear but Defendant Morrison, if he exercised reasonable care, could see that Mr. Eubanks' intended path of travel was clear.
11. At that moment, Defendant Morrison failed to exercise reasonable care in determining whether Mr. Eubanks' intended path of travel was clear. Defendant Morrison told Mr. Eubanks that it was clear for him to back up when it was not.
12. This action of Defendant Morrison was gratuitously taken for the benefit of Mr. Eubanks and thus should have been performed in accordance with the duty to exercise reasonable care.
13. Relying on Defendant Morrison's representation that it was safe for him to back up, Mr. Eubanks placed his vehicle in reverse and backed up.
14. As a result of Defendant Morrison's negligence as alleged above, Mr. Eubanks' vehicle struck the motorcycle *63 upon which Plaintiff was a passenger, knocking her to the ground and injuring her.
15. As a result of the negligence of Defendant Morrison, plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future.
Significantly, these allegations indicate that Morrison, the passenger, was in a superior vantage point to the driver (see allegations 8, 9, and 10), and that he affirmatively undertook the duty to determine if it was safe to back the vehicle up (see allegations 6, 7, and 11).
"Whether a complaint should be dismissed is a question of law." City of Gainesville v. State, Dep't of Transp., 778 So.2d 519, 522 (Fla. 1st DCA 2001). Thus, our "standard of review is de novo." Id. "For purposes of ruling on the motion to dismiss, the trial court was obliged to treat as true all of the amended complaint's well-pleaded allegations, ... and to look no further than the amended complaint...." Id. "`A reviewing court operates under the same constraints.'" Id. (quoting Andrews v. Fla. Parole Comm'n, 768 So.2d 1257, 1260 (Fla. 1st DCA 2000)). Applying this standard to the trial court's final order of dismissal, the trial court erred in granting Morrison's motion to dismiss. Given the standard for determining the existence of a duty arising from the facts in a particular case as set forth in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), and the discussion of proximate causation in Goldberg v. Florida Power & Light Co., 899 So.2d 1105 (Fla.2005), Roos's amended complaint sufficiently stated both the duty and causation elements of a cause of action for negligence.
There are four recognized sources for the duty of care in a negligence action: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." McCain, 593 So.2d at 503 n. 2, quoted in Goldberg, 899 So.2d at 1110. Roos's argument in support of the sufficiency of her amended complaint, as well as the allegations themselves, place this case within the fourth category; Morrison's duty of care, if one existed at all, arose from the specific facts of this case.
In McCain, the supreme court explained that "[f]oreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions." Id. at 503. The supreme court clarified that, while "the question of foreseeability can be relevant both to the element of duty (the existence of which is a question of law) and the element of proximate causation (the existence of which is a question of fact)," "[t]he duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others." Id. at 502. "Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." Id. at 503. "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Id. (italicized emphasis in original). "[T]rial and appellate courts cannot find a lack of *64 duty if a foreseeable zone of risk more likely than not was created by the defendant." Id. "[T]he proper inquiry for the reviewing appellate court," when determining whether a trial court's determination of the existence or non-existence of a duty in a given set of circumstances was correct, "is whether the defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred." Id. at 504 (italicized emphasis in original).
A passenger or guest riding in an automobile is generally entitled to "trust the vigilance and skill" of the driver. Knudsen v. Hanlan, 160 Fla. 566, 36 So.2d 192, 194 (1948); Florida E. Coast Ry. Co. v. Keilen, 183 So.2d 547, 549 (Fla. 3d DCA 1966); see also Bessett v. Hackett, 66 So.2d 694, 698 (Fla.1953). However, Florida law does recognize that certain circumstances can give rise to a duty on the part of a mere passenger to make reasonable attempts "through suggestion, warning, protest or other means suitable to the occasion, to control the conduct of the driver." Knudsen, 36 So.2d at 194, quoted in Bessett, 66 So.2d at 699; see also Keilen, 183 So.2d at 550. Specifically, for the exception to the general rule of passenger passivity discussed in these cases to arise, the passenger must "know[ ], or by the exercise of ordinary and reasonable care should know from the circumstances of the occasion, that the driver is not exercising that degree of care in the operation of the vehicle compatible with the safety of his passenger." Knudsen, 36 So.2d at 194; see also Bessett, 66 So.2d at 698-99; Keilen, 183 So.2d at 550. Cf. Sisam v. Brantley, 366 So.2d 1195, 1196-97 (Fla. 2d DCA 1979) (holding that, even if she had seen approaching automobile, passenger had no duty to warn driver of that vehicle, which ultimately struck passenger's side of driver's vehicle, because there was "nothing to indicate" that passenger knew the course of action/intended path of travel the driver was going to take, and because there was "no suggestion that the [driver] was driving recklessly" before the driver took the action which resulted in the collision).
The amended complaint contains insufficient allegations to bring it within the "duty to warn" exception to the general passenger passivity rule; however, the cases recognizing and discussing that specific exception indicate in a broader sense that certain circumstances can give rise to a duty on the part of a passenger to use reasonable care in giving the driver advice or warnings as to the safety implications of certain conditions on the roadway. This position is clearly in keeping with the holding in McCain that a duty of care can arise where the "defendant's conduct created a foreseeable zone of risk." McCain, 593 So.2d at 504. As such, the case of Halenda v. Habitat for Humanity Int'l, Inc., 125 F.Supp.2d 1361 (S.D.Fla.), aff'd, 245 F.3d 794 (11th Cir.2000), relied upon by Morrison both in the trial court and on appeal, does not necessarily support his argument that the circumstances of this case did not give rise to a duty on Morrison's part to use reasonable care in determining whether his driver's intended path of travel was clear because the only theory of liability on the part of the passenger discussed and analyzed in Halenda was the "duty to warn" exception to the general passenger passivity rule. See id. at 1365 (analyzing passenger's independent liability for resulting accident with reference only to the Florida state court decisions of Bessett and Sisam).
Florida law clearly recognizes that "an action undertaken for the benefit of another, even gratuitously, must be performed in accordance with an obligation to exercise reasonable care." Barfield v. Langley, 432 So.2d 748, 749 (Fla. 2d DCA *65 1983) (relying on various cases, including Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932), and Padgett v. Sch. Bd. of Escambia County, 395 So.2d 584 (Fla. 1st DCA 1981)). This principle was recognized by the Florida Supreme Court in Kerfoot v. Waychoff, 501 So.2d 588 (Fla. 1987), when it discussed the question of whether "an automobile driver who, by signals, relinquishes his right of way to another vehicle, owe[s] any duty to reasonably ascertain whether traffic lanes, other than his own, will safely accommodate the other vehicle." Id. at 588-89. Although the supreme court held that, under the facts in Kerfoot, "no jury question existed" with regard to whether the hand signal given gave rise to liability on the part of the signaling driver to the other vehicle for injuries resulting from a collision between the other vehicle and a vehicle traveling in the lane adjacent to the signaling driver, see id. at 588-90, the supreme court specifically left open the possibility of liability on the part of a signaling driver under different facts than existed in Kerfoot. See id. at 590 ("Our holding in this case is limited to its circumstances and should not be broadly construed to hold that drivers who give gratuitous signals to other drivers cannot be guilty of negligence for causing an accident."). The supreme court in Kerfoot specifically noted that "`the signaler's ability to foresee potential danger,'" and whether the signaling driver is "`in a position to ascertain whether the person receiving the signal may safely proceed,'" were important to determining the liability of a signaling driver under the circumstances presented in that case. See id. at 590 (quoting Nolde Bros., Inc. v. Wray, 221 Va. 25, 266 S.E.2d 882 (1980)).
Both this court and the Third District Court of Appeal have read Kerfoot to stand for the proposition that a signaling driver can be held liable under certain circumstances for a collision occurring as a result of the signaling driver's "all clear" signal. A little over a year after the supreme court issued its opinion in Kerfoot, the Third District reversed a final summary judgment in favor of a signaling driver on grounds that genuine issues of material fact existed in the case regarding the criteria necessary for holding the signaling driver liable for damages resulting from a collision between the vehicle to which the signal was given and another motorist. See Tellechea v. Coca Cola Bottling Co. of Miami, Inc., 530 So.2d 1083 (Fla. 3d DCA 1988). The Third District in Tellechea identified the material criteria for determining liability, at issue in that case, as (1) "the apparent meaning and appropriate interpretation of the signal," and (2) "whether the Coca Cola driver, seated high above the road in a truck presumably equipped with the right-hand rear mirror required by law, was in a `position to determine if the adjacent lane was clear of motor vehicles.'" Id. at 1084 (internal citations omitted) (quoting Kerfoot). Five years later, this court, in WED Transportation Systems, Inc. v. Beauchamp, 616 So.2d 146 (Fla. 1st DCA 1993), affirmed a final judgment finding a signaling driver liable for forty percent of the damages sustained in a collision that occurred between the vehicle to which the signal was given and another motorist. This court, relying on Kerfoot and Tellechea, held that any factual disputes concerning the criteria giving rise to liability on the part of the signaling driver, which this court identified as "the signaler's ability to ascertain potential danger and the reasonableness of the driver of the turning vehicle relying on the driver of the signaling vehicle," were jury questions that had been resolved against the signaling driver in that case. See id. at 148.
Contrary to the position taken by Morrison in his brief, the driver status of the *66 signalers in Kerfoot, Tellechea, and Beauchamp, was not determinative of the question of liability on the part of the signalers in those cases; instead, the determinative criteria for liability attaching to the signalers in those cases were: (1) the meaning of the signals given when viewed in context; and (2) whether it was reasonable, given the position of the signaler relative to the danger, for the other driver to have relied on the signal. See Kerfoot, 501 So.2d at 590; Tellechea, 530 So.2d at 1084; Beauchamp, 616 So.2d at 148. It would seem then that nothing would prevent the principles of Kerfoot from being used in the context presented here  namely, where a passenger undertakes a duty to determine whether it is safe for the driver to proceed and fails to use reasonable care in exercising that duty. In fact, the Louisiana case of Jagneaux v. Louisiana Farm Bureau Casualty Insurance Co., 771 So.2d 109 (La.Ct.App.2000), did just that with the signaling driver liability case law in that jurisdiction.
The facts in Jagneaux were as follows:
[F]ifteen-year-old Jeremy Byrne was operating a single-seat, enclosed-cab tractor (with plow in tow) while his friend, Chris Edwards, fourteen, sat on the lefthand armrest. As the tractor traveled along a wet, unpaved road, its tires began spewing mud and dirt, eventually obstructing the views from both side windows. When the teenagers reached the stop sign at an intersection with a state highway, Jeremy asked Chris to check for traffic. Chris opened the door and stepped out of the cab onto the tractor's diesel tank to get a better view of the road. He signaled to Jeremy, but what that signal meant and Jeremy's understanding of it are in dispute. The result is that Jeremy entered the intersection before it was safe to do so and collided with the Jagneauxs' van.
Id. at 110. The Jagneauxs sued the parents of the teenagers, their insurers, and the manufacturer of the tractor. See id. The trial court dismissed the Jagneauxs' claim against Chris Edwards (the passenger) after concluding that he "did not breach any duties owed by a guest passenger." Id. On appeal, the Jagneauxs argued that the trial court "fail[ed] to recognize that Chris undertook a duty beyond that of a guest passenger." Id. The court agreed based on the reasoning of Lennard v. State Farm Mutual Automobile Insurance Co., 649 So.2d 1114 (La.Ct.App.1995). See Jagneaux, 771 So.2d at 111-12. In so doing the court noted the trial court's "concern that every guest passenger in an accident would face liability if [the] case were allowed to proceed," but determined that such would not be the case because "Chris was acting beyond the role of a guest passenger when he assumed the duty of checking for traffic." Id. at 112.
In reaching its conclusion, the court in Jagneaux, specifically stated that the following law, as set forth in Lennard, a case involving a signaling driver, applied to the determination of Chris's liability in that case:
`Any person who waves or signals to indicate the way is clear for a motorist to turn has a duty to exercise reasonable care in doing so. However, before any person can be assessed with fault for failing to exercise reasonable care in waving or signaling, the party alleging the waver's negligence must prove the following: (1) the `waver' did indeed make a signal for the motorist to cross, (2) the `waver' intended to convey that he had checked for traffic, (3) the `waver' intended to indicate that it was entirely safe to cross the street, (4) the motorist reasonably relied on the signal in deciding to cross, and (5) these circumstances, taken as a whole, caused the accident.'
*67 Jagneaux, 771 So.2d at 111 (emphasis in original; internal citation from Lennard quote omitted) (quoting from Lennard). The opinion in Jagneaux has never been cited by another court.
The New Mexico decision of Moya v. Warren, 88 N.M. 565, 544 P.2d 280 (1975), appears to hold, contrary to Jagneaux, that a passenger cannot be held liable to a third-party motorist on a theory of undertaken duty when the passenger has indicated to the passenger's driver that the intended path of travel is clear. However, it is worth noting that the discussion of the asserted duty of care in Moya appears to have been taking place in the context of a body of case law in that jurisdiction that had not yet recognized a duty of care on the part of a signaling driver to a third-party motorist under circumstances similar to those in Kerfoot. See Joseph B. Conder, Annotation, Motorist's Liability for Signaling Other Vehicle or Pedestrian to Proceed, or to Pass Signaling Vehicle, 14 A.L.R.5th 193 (2004) (discussing case law from various jurisdictions regarding liability of signaling drivers, but noting no case law on subject from New Mexico). Because such a duty of care on the part of a signaling driver has already clearly been recognized in Florida, as discussed above, the Louisiana court's decision in Jagneaux constitutes more persuasive precedent in this jurisdiction than the New Mexico court's decision in Moya.
Based on the persuasive authority of Jagneaux and the principles set forth in Kerfoot, the allegations in Roos's amended complaint sufficiently established that Morrison undertook the duty of determining whether his driver's intended path of travel was clear. Roos's amended complaint alleged that Morrison agreed to see if it was clear for his driver to back up, Morrison was in a better position than the driver to determine whether the intended path of travel was clear, Morrison clearly told the driver that it was clear to back up, and the driver relied on Morrison's statement in determining that it was safe to back up. In accordance with Kerfoot, as seen through the lens of Jagneaux, these allegations were more than sufficient to withstand a motion to dismiss. It is worth noting that, contrary to the position taken by Morrison in his brief, the recognition of a cause of action against him in this case will not "open the floodgates" to all passengers facing potential liability for their actions immediately prior to a collision; a cause of action like the one against Morrison will only arise if it can be proven that the passenger actually agreed to determine whether the driver's intended path of travel was clear and failed to use reasonable care in making that determination. Cf. Gandy v. Terminal R.R. Ass'n of St. Louis, 623 S.W.2d 49, 52 (Mo.Ct.App.1981) (determining that passenger could not be held liable for injuries sustained by driver in automobile collision on theory that passenger had assumed duty of determining safety of intended path of travel because there was "no evidence [passenger] voluntarily assumed the duty to keep a lookout for the train").
In addition to his "no duty" argument, Morrison also argues that he cannot be held liable to Roos because the independent actions of Morrison's driver constituted an intervening cause of the accident as a matter of law in that the driver was at all times in complete control of the vehicle. In essence, Morrison seems to be arguing that, in light of the existence of the driver's intervening actions as set forth in the amended complaint, Roos cannot allege proximate causation as a matter of law.
While it is true that "[a] negligent actor ... is not liable for damages suffered by an injured party `when some separate force or action is the active and efficient intervening cause' of the injury," "`if an intervening cause is foreseeable the *68 original negligent actor may still be held liable.'" Goldberg, 899 So.2d at 1116 (quoting Gibson v. Avis Rent-A-Car Sys., Inc., 386 So.2d 520, 522 (Fla.1980)). In other words, "[t]he question of whether an intervening cause is foreseeable is for the trier of fact." Id. As such, the trial court's dismissal of the amended complaint cannot have been appropriately based on the conclusion that, given the driver's intervening actions, the amended complaint failed to sufficiently state the element of proximate causation as a matter of law. See State, Dep't of Transp. v. V.E. Whitehurst & Sons, Inc., 636 So.2d 101, 104 (Fla. 1st DCA 1994) ("Factual determinations ... are not properly determined in a motion to dismiss.").[1]
We, therefore, reverse and remand with directions that Roos's cause of action against Morrison, as stated in the amended complaint, be allowed to proceed. We do so because, in our view, the results in this case are mandated by application of the principles announced in McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992). We are not unmindful, however, that our decision may result in some cases in a partial or total transfer of liability from a driver with mandated insurance coverage to a passenger who may or may not be covered by insurance. Accordingly, as this is a case of first impression in Florida, we certify the following question to the supreme court as being one of great public importance:
MAY A VEHICULAR PASSENGER BE HELD LIABLE TO ANOTHER VEHICULAR PASSENGER IN CIRCUMSTANCES WHERE THE POTENTIALLY LIABLE PASSENGER WAS IN A SUPERIOR POSITION TO THE DRIVER OF THAT PASSENGER'S VEHICLE TO OBSERVE A POTENTIAL HAZARD AND GAVE AFFIRMATIVE ADVICE TO THE DRIVER WHICH RESULTED IN A COLLISION WITH THE OTHER PASSENGER'S VEHICLE?
VAN NORTWICK and BROWNING, JJ., concur.
NOTES
[1] Rather than the driver's actions constituting an intervening cause as argued by Morrison, the allegations in the amended complaint may be interpreted to mean that the driver and Morrison were acting in concert to cause the tortious injury to Roos. Section 876 of the Restatement (Second) of Torts states:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a common design with him, or
....
(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.
Restatement (Second) of Torts § 876 (1979). Florida courts recognize the "acting in concert" basis for joint and several liability. See, e.g., Acadia Partners, L.P. v. Tompkins, 759 So.2d 732, 736-37 (Fla. 5th DCA 2000). The Restatement explains that parties are acting in concert when they act pursuant to an agreement to cooperate in a line of conduct, and that the agreement need not be expressed in words, but may be implied from the conduct itself. Restatement (Second) of Torts § 876, cmt. (a) on clause (a). "Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts." Id. Because the cause of action before us is only stated against the passenger Morrison, we do not address the issue of the joint and several liability of the driver and the passenger, see, e.g., Vetter v. Morgan, 22 Kan. App.2d 1, 913 P.2d 1200, 1205-06 (1995); Cooper v. Bondoni, 841 P.2d 608, 611-12 (Okl. App.1992), or the application of section 768.81, Florida Statutes (2002), to this action. See Smith v. Dep't of Ins., 507 So.2d 1080, 1090-91 (Fla.1987).