DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HARRY TAUBENFELD,** as shareholder of **PASSOVER FB., INC.,**
Appellant,

v.

**JONATHAN LASKO, SAMUEL LASKO, ARLENE LASKO, AVI LASKO,**
and **LASKO GETAWAYS, LLC.,**
Appellees.

No. 4D20-1362

[August 11, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack Tuter, Judge; L.T. Case No. CACE18-014466.

Donna Greenspan Solomon of Solomon Appeals, Mediation & Arbitration, Fort Lauderdale, and Mark R. Osherow of Osherow, PLLC, Boca Raton, for appellant.

Adam M. Schachter, Gerald E. Greenberg, Freddy Funes, and Mikayla Espinosa of Gelber Schachter & Greenberg, P.A., Miami, for appellees.

GROSS, J.

Harry Taubenfeld appeals a final order dismissing his Fourth Amended Complaint with prejudice. The complaint contained claims against various defendants arising out of a business dispute involving a closely-held corporation. We reverse the circuit court's dismissal of the Fourth Amended Complaint and a certain count in the Second Amended Complaint, holding that Taubenfeld stated causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, and aiding and abetting conversion.

### *Background*

Harry Taubenfeld and Jonathan Lasko ("Jonathan") are each 50% shareholders of Passover FB, Inc. The essence of the Fourth Amended Complaint is that Jonathan, with the assistance of his family, froze Taubenfeld out of Passover FB and transferred its assets to a new entity, Lasko Gateways, LLC.

The operative complaint's allegations, which must be accepted as true for the purposes of this appeal, reveal the following facts.

Passover FB was incorporated in 2010 and did business under the name Lasko Kosher Getaways. Passover FB's principal business was holding high-end getaways at luxury hotels during Passover holidays.

There was no shareholder agreement between Jonathan and Taubenfeld. No bylaws existed for Passover FB. The shareholders of Passover FB never elected any directors.

From the corporation's inception in 2010 until late 2017, Taubenfeld was the president of Passover FB, running its business operations. Jonathan served as vice president, overseeing the day-to-day matters and providing advice about the business's expenditures. Jonathan appointed his father, Sam Lasko, his mother, Arlene Lasko, and his brother, Avi Lasko, to serve "as employees of Passover [FB] and/or as an agent of Jonathan in his capacity as a senior officer of Passover FB."

For several years prior to Passover FB's incorporation in 2010, Sam and Arlene held annual Passover events through Lasko Family Kosher Tours, Inc. ("Lasko Tours"). By the end of the 2010 Passover season, however, Sam and/or Lasko Tours were in debt in excess of $2,000,000. At that point, Taubenfeld rescued the business by agreeing to become a 50% owner of the new corporation, Passover FB, which assumed some of Lasko Tours' outstanding debt and took ownership of all its assets.

The relationship between Taubenfeld and Jonathan soured in 2017. Around this time, American Express obtained a judgment confirming an arbitration award against Taubenfeld for over $750,000. The award stemmed from another Taubenfeld-owned corporation's unpaid credit card bill, which Taubenfeld had personally guaranteed. Taubenfeld sought indemnification from Passover FB, claiming that the expenditures on this credit card were incurred on Passover FB's behalf.

On December 1, 2017, Jonathan "usurped the office of President of Passover FB" and intentionally took over sole management of Passover FB. Jonathan made "all strategic and operational business decisions of Passover FB, effectively ousting [Taubenfeld] as the President of Passover FB and assuming sole responsibility for all of Passover FB's business operations." Furthermore, Arlene "formed Lasko Getaways as a Florida Limited Liability Company on December 1, 2017, with the purpose of diverting Passover FB's assets to Lasko Getaways." Arlene and Avi were the managing members of Lasko Getaways.

2

During the week of December 11, 2017, Taubenfeld's personal bank accounts were frozen due to a writ of garnishment issued in the American Express lawsuit. Taubenfeld contacted Sam to arrange to receive his paycheck manually. Sam falsely accused Taubenfeld of stealing $300,000 from Passover FB. Sam demanded that Taubenfeld sign a transfer agreement regarding Taubenfeld's ownership in Passover FB before payment of his salary would be authorized.

On February 2, 2018, Taubenfeld's attorney sent Jonathan a demand letter, accusing the Laskos of various wrongdoing and insisting that, among other things, all assets be returned to Passover FB. Litigation ensued.

### The Fourth Amended Complaint

Taubenfeld filed the Fourth Amended Complaint as a derivative action on behalf of Passover FB against Jonathan, Sam, Arlene, Avi, and Lasko Getaways ("the Lasko Defendants"). The complaint alleged that on December 1, 2017, Passover FB's assets consisted of: (1) advantageous business relationships with venues in Miami Beach and Aventura; (2) an advantageous business relationship with the founder of JM Food Design; (3) a contractual relationship with TB Isle Resort d/b/a Turnberry Isle Miami, the venue for the 2018 Passover Event; (4) goodwill, with an estimated value of over $4,500,000, "developed over more than twenty-five (25) years associated with the Lasko name and owned exclusively by Passover FB since the formation of Passover FB in 2010"; (5) confidential customer lists, advertising relationships, catering contracts, and business history; (6) hard assets, including five tractor-trailers and their contents; (7) intellectual property consisting of websites; (8) records, bank accounts, and software; and (9) cash and cash equivalents.

The Fourth Amended Complaint contained five counts:

1. Breach of fiduciary duty against Jonathan.
2. Aiding and abetting breach of fiduciary duty against Sam.
3. Aiding and abetting breach of fiduciary duty against Arlene.
4. Aiding and abetting breach of fiduciary duty against Avi.
5. Conversion against Lasko Getaways.

Count 1

Count 1 alleged that Jonathan "breached his fiduciary duty to Passover FB" and "directly caused Passover FB's Passover Business to decay, be wasted and become nonexistent." Count 1 claimed that Jonathan owed "a fiduciary duty to Passover FB to perform his duties of managing all of the business operations of the company in the best interests of Passover FB." Count 1 further alleged that Jonathan engaged in multiple acts, described in 15 lettered paragraphs, all of which involved the transfer of Passover FB's assets and business to Lasko Getaways.

Count 1 further alleged that the specified acts constituted a breach of Jonathan's fiduciary duty to Passover FB. For example, Count 1 alleged that "as an officer of Passover FB Jonathan breached one or more of the three basic fiduciary duties — duty of loyalty, duty of care and duty of good faith — to Passover FB." Finally, Count 1 alleged that as a result of Jonathan's breaches of his fiduciary duties, "Passover FB has been substantially damaged in that the assets of Passover FB valued well in excess of more than $4,500,000.00 as of December 1, 2017, were wasted and dissipated to a nominal, if any, value."

Count 2

Count 2 alleged that Passover FB had been damaged as a result of "Sam's aiding and abetting Jonathan's breach of his fiduciary duty to Passover FB." According to Count 2, "Sam was well aware that Jonathan's directing the transferring of the assets of Passover FB to Lasko Getaways would constitute corporate waste of Passover FB's assets and Jonathan's breach of fiduciary duty to Passover FB." Nonetheless, "Sam encouraged Jonathan to form Lasko Getaways and to convert the assets of Passover FB . . . to assets of Lasko Getaways by emphasizing to Jonathan that Sam [had] founded Lasko Getaways almost thirty (30) years prior to December 1, 2017, and only the Lasko family should own and operate the Passover business that had been continuously owned by Passover FB since 2010."

In seven paragraphs, Count 2 described the acts that assisted Jonathan's breach of fiduciary duty, including "[p]articipating in the removal of five tractor-trailers and their contents" and "[s]peaking with clients and potential clients of Passover FB to divert the client's business relationship or potential business relationship with Passover FB to Lasko Getaways."

4

Count 3

Count 3 alleged that Passover FB had been damaged as a result of "Arlene's aiding and abetting Jonathan's breach of his fiduciary duty to Passover FB." According to Count 3, "Arlene knew that Jonathan's directing the transferring of the assets of Passover FB to Lasko Getaways would constitute corporate waste of Passover FB's assets and Jonathan's breach of Jonathan's fiduciary duty to Passover FB." Nonetheless, "Arlene not only encouraged Jonathan to form Lasko Getaways, but actually formed Lasko Getaways as a Florida limited liability company on December 1, 2017, with the purpose of diverting Passover FB's assets to Lasko Getaways."

In eight paragraphs, the complaint specified acts that assisted Jonathan's breach of fiduciary duty to Passover FB, including (1) telling "vendors, venues, entertainers, professional speakers, Rabbis and other persons under contract" that Passover FB had changed its name to Lasko Getaways and that "Lasko Getaways was the proper business entity" under existing contracts, and (2) diverting revenue due to Passover FB by endorsing checks payable to Passover FB and directing the proceeds to Lasko Getaways.

Count 4

Count 4 alleged that Passover FB had been damaged as a result of "Avi's aiding and abetting Jonathan's breach of his fiduciary duty to Passover FB." According to Count 4, "Avi knew that Jonathan's directing the transferring of the assets of Passover FB to Lasko Getaways and Avi's assistance in accomplishing that goal would constitute corporate waste of Passover FB's assets and Jonathan's breach of Jonathan's fiduciary duty to Passover FB."

In five paragraphs, the complaint described conduct of Avi that assisted Jonathan's breach of fiduciary duty to Passover FB, including assisting Sam in removing five tractor-trailers filled with items and equipment owned by Passover FB and helping in the transfer of Passsover FB's office equipment to the possession of Lasko Getaways.

Count 5

Count 5 alleged that Lasko Getaways, acting through its members and the Lasko Family, "wrongfully asserted dominion and control and has thereafter continuously asserted dominion and control over all of the above-described assets of Passover FB, to the exclusion of Passover FB."

The alleged acts constituting conversion included "[d]irecting all revenue prepaid and/or derived from the 2018 and subsequent Passover Events to be paid to Lasko Getaways and not to Passover FB" and "[t]ransferring possession, ownership and/or control of all tangible and intangible personal property of Passover FB from Passover to Lasko Getaways."

### *Final Order Dismissing the Fourth Amended Complaint*

The circuit court granted the Lasko Defendants' motion to dismiss the Fourth Amended Complaint. The court dismissed Count 1 with prejudice, reasoning that the allegations were "devoid of sufficient factual support to put Jonathan Lasko on notice of the specific duty he purportedly owed to Passover FB" and that "the nexus between the alleged conduct attributable to Jonathan Lasko and the consequent damage to Passover FB is unclear and speculative."

The court also dismissed Counts 2, 3, and 4 with prejudice, concluding that those counts suffered from the same deficiencies as Count 1 "because the allegations do not identify conduct engaged [in] by Jonathan Lasko that constitutes a breach of a specific fiduciary duty." The court also reasoned that Counts 2, 3, and 4 were "bereft of facts explaining the manner of substantial assistance [or] encouragement" undertaken by Sam, Arlene, and Avi in support of Jonathan's purported breaches. Also, the court reasoned that the complaint referred to actions undertaken by the Lasko family without identifying which member of the Lasko family engaged in which specific conduct, effectively commingling the allegations such that the court could not "attribute any of the acts to any of the Defendants."

Finally, the court dismissed Count 5 with prejudice, reasoning that: (1) Count 5 did not "adequately plead facts delineating how Lasko Getaways wrongfully exercised dominion and control over the property" described in the complaint; (2) there was "no allegation that Passover FB owned the assets" outlined in the complaint; (3) Count 5 described "generically and in overbroad terms" the assets allegedly converted, including business relationships and goodwill, and there did not "appear to be any state appellate cases holding that goodwill can be a definitive subject of conversion"; and (4) Count 5's "inclusion of cash or cash equivalents into the laundry list of converted assets" was insufficient because there were no allegations that the cash was capable of identification.

6

### Standard of Review

A ruling on a motion to dismiss for failure to state a cause of action is reviewed de novo. *Regis Ins. Co. v. Miami Mgmt., Inc.*, 902 So. 2d 966, 968 (Fla. 4th DCA 2005). "To state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 495 (Fla. 4th DCA 2001) (internal quotation marks omitted).

"In reviewing an order granting a motion to dismiss, this court's gaze is limited to the four corners of the complaint." *Goodall v. Whispering Woods Ctr., LLC*, 990 So. 2d 695, 697 (Fla. 4th DCA 2008) (internal quotation marks omitted). The facts alleged in the complaint and its exhibits must be accepted as true, and all reasonable inferences must be drawn in favor of the pleader. *Taylor v. City of Riviera Beach*, 801 So. 2d 259, 262 (Fla. 4th DCA 2001). We view the allegations of the complaint in the light most favorable to the nonmoving party. *Bell v. Indian River Mem'l Hosp.*, 778 So. 2d 1030, 1032 (Fla. 4th DCA 2001).

### The Fiduciary Duties of Officers and Directors of a Corporation

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).

"Officers and directors of a corporation are liable for damages to the corporation which result from a breach of their trust, a violation of authority or neglect of duty." *Flight Equip. & Eng'g Corp. v. Shelton*, 103 So. 2d 615, 627 (Fla. 1958). This liability derives from the common law rule that "every agent is responsible to his principal for such acts which result in damage to the principal." *Id.*

Corporate law recognizes two fundamental fiduciary duties: the duty of care and the duty of loyalty. *In re Orchard Enters., Inc. Stockholder Litig.*, 88 A.3d 1, 32 (Del. Ch. 2014).[1] "These duties differ in nature and content, though they doubtless intersect and overlap." *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 84 (Miss. 1992).

---

[1] Florida courts may look to the law of Delaware for guidance in establishing their own corporate doctrines. *Boettcher v. IMC Mortg. Co.*, 871 So. 2d 1047, 1052 n.5 (Fla. 2d DCA 2004).

Lawyers tend to sling the term "good faith" into a pleading as if it creates contractual or other duties that form the basis of a lawsuit. For example, in *Hospital Corp. of America v. Florida Medical Center, Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998), we rejected the argument that a breach of contract could arise from an implied duty of good faith; we observed that "a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements."

Within the law on fiduciary duties, the application of "good faith" is also limited and is best viewed as being subsumed within the duty of loyalty.

"[A]lthough good faith may be described colloquially as part of a 'triad' of fiduciary duties that includes the duties of care and loyalty, the obligation to act in good faith does not establish an independent fiduciary duty that stands on the same footing as the duties of care and loyalty." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (footnote omitted). The duty to act in good faith is a subsidiary element of the duty of loyalty. *Id.*

The duty of care is the requirement to "use that amount of care which ordinarily careful and prudent men would use in similar circumstances, and consider all material information reasonably available in making business decisions," with alleged breaches giving rise to liability only if the actions are grossly negligent. *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) ("*Disney I*") (footnote and internal quotation marks omitted). "A good faith erroneous judgment . . . implicates the duty of care rather than the duty of loyalty." *Zirn v. VLI Corp.*, 681 A.2d 1050, 1062 (Del. 1996).

"Essentially, the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). As the Fifth District has explained, "[c]orporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation." *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA 1992).

Fiduciary obligors may not "either directly or indirectly, in their dealings on behalf of the fiduciary beneficiary . . . , make any profit or acquire any other personal benefit or advantage, not also enjoyed by the

fiduciary beneficiary, and if they do, they may be compelled to account to the beneficiary in an appropriate action." *Id.* "If a fiduciary obligor acquires in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence[,] he violates the doctrine of corporate opportunity." *Id.* at 108 (internal quotation marks omitted).

"In short, Florida courts have recognized that corporate officers and directors owe both a duty of loyalty and a duty of care to the corporation that they serve." *McCoy v. Durden*, 155 So. 3d 399, 403 (Fla. 1st DCA 2014).

In the context of a closely-held corporation, we have held that a plaintiff shareholder was required to bring a derivative action, rather than a direct action, to pursue his cause of action for breach of fiduciary duty against the majority shareholders who allegedly opened a competing business and diverted assets to the new business, as the allegations would affect the relative value of all the shares owned by all the shareholders. *See Karten v. Woltin*, 23 So. 3d 839, 841 (Fla. 4th DCA 2009).

Still, a former agent "is free to compete against a former employer (absent a noncompetition agreement to the contrary)." *Harllee v. Prof'l Serv. Indus., Inc.*, 619 So. 2d 298, 300 (Fla. 3d DCA 1992). After the employment terminates, in the absence of a restrictive agreement, the agent can properly compete with the principal as to matters for which the agent has been employed. *Restatement (Second) of Agency* § 393 cmt. e (Am. L. Inst. 1958).

An agent does not violate the duty of loyalty by merely organizing a corporation to carry on a rival business after the agent's employment ends. *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981). Mere preparation to open a competing business, such as obtaining a bank account and acquiring office space, does not violate the duty of loyalty. *Harllee*, 619 So. 2d at 300. "However, an employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1149 (M.D. Fla. 2007).

### *Count 1 of the Complaint Stated a Cause of Action for Breach of Fiduciary Duty against Jonathan Lasko*

The Fourth Amended Complaint stated a cause of action for breach of fiduciary duty against Jonathan Lasko. The complaint alleged each element of breach of fiduciary duty and alleged sufficient ultimate facts to show Taubenfeld's entitlement to relief on Passover FB's behalf.

First, Taubenfeld alleged that Jonathan owed a fiduciary duty as the "sole operating officer" of Passover FB. Second, Taubenfeld alleged that Lasko breached his fiduciary duty to Passover FB by, among other things, mounting a takeover of the company, diverting Passover FB's business relationships and revenues to a competitor (Lasko Getaways), and executing documents to transfer Passover FB's property to Lasko Getaways. Third, Taubenfeld alleged that Jonathan's breaches damaged Passover FB by causing its assets to be wasted and dissipated to a nominal value. Thus, because the complaint alleged sufficient facts constituting a breach of fiduciary duty, the trial court erred in dismissing this count.

We reject the Lasko Defendants' argument that Jonathan was a former officer who no longer owed a fiduciary duty to Passover FB. This argument was not raised in their motion to dismiss. Nor was it a basis for the trial court's ruling. On the merits, this argument relies upon a strained interpretation of the Fourth Amended Complaint—namely, that Jonathan "stopped being Passover FB's officer on December 1, 2017." Viewing the pleading in the light most favorable to Taubenfeld, the complaint alleged that Jonathan was an operating officer of Passover FB at the time he performed disloyal acts—not a former officer free to compete against Passover FB. Nowhere does the complaint allege that Jonathan resigned his position as an officer of Passover FB.

We also reject the circuit court's conclusion that the allegations of Count 1 were "devoid of sufficient factual support." We have found no authority for the proposition that a complaint must plead a breach of a fiduciary duty with heightened specificity to state a cause of action. *Cf.* Fla. R. Civ. P. 1.120(b) (providing that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with such particularity as the circumstances may permit"); *Hembd v. Dauria*, 859 So. 2d 1238, 1239 (Fla. 4th DCA 2003) (observing that Florida law requires fraud to "be pled with precision").

Even assuming the existence of such an elevated pleading requirement, it was satisfied in this case. Each of Jonathan's alleged actions in Count 1 set forth the specific fiduciary duties (e.g., duty of loyalty and duty of

care) that were allegedly breached by the conduct at issue.  Although the duty of loyalty and the duty of care are separate duties, the same conduct can violate both duties—in other words, conduct can be both disloyal to the corporation and imprudent from the perspective of the corporation.  *See Disney I*, 907 A.2d at 746 n.402 ("[A]t its core, the duty of loyalty is just a bet that some situations are likely to lead to careless or imprudent transactions for the corporation, which is to say that the duty of care is a motivating concern for the duty of loyalty.  Here again the duties overlap.") (quoting Sean J. Griffith, *Good Faith Business Judgment: A Theory of Rhetoric in Corporate Law Jurisprudence*, 55 DUKE L.J. 1, 43 (2005)).

Contrary to the circuit court's conclusion, the allegations in Count 1 were not conclusory.  Rather than being "unclear and speculative," there is an obvious nexus between Jonathan's alleged conduct (diverting all of Passover FB's business and property to a newly-formed competitor) and the alleged damage to Passover FB (diminishment of the corporation's value).

### Counts 2, 3, and 4 of the Fourth Amended Complaint Each Stated a Cause of Action for Aiding and Abetting Jonathan Lasko's Breach of Fiduciary Duty

Taubenfeld argues that the Fourth Amended Complaint contained sufficient ultimate facts to establish each element of aiding and abetting Jonathan's breach of fiduciary duty.  Taubenfeld also points out that the pleading satisfies Florida Rule of Civil Procedure 1.110(f) by setting forth separate counts against Sam, Arlene, and Avi, and that specific conduct is alleged against each of them.

<u>Relevant Law</u>

To state a cause of action for aiding and abetting the breach of a fiduciary duty, a plaintiff must plead facts establishing: "1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Fonseca v. Taverna Imps., Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017).

Each claim founded upon a separate transaction or occurrence shall be stated in a separate count.  Fla. R. Civ. P. 1.110(f).  Commingling various claims against all defendants together may "warrant dismissal of a complaint."  *Collado v. Baroukh*, 226 So. 3d 924, 927 (Fla. 4th DCA 2017).

<u>This Case</u>

Here, the Fourth Amended Complaint stated a cause of action for aiding and abetting breach of fiduciary duty against Sam, Arlene, and Avi. The complaint alleged each element of aiding and abetting breach of fiduciary duty and alleged sufficient ultimate facts to show that Taubenfeld was entitled to relief as a shareholder of Passover FB.

For the reasons discussed above, the complaint alleged ultimate facts establishing the first two elements of aiding and abetting a fiduciary duty— namely, a fiduciary duty on the part of Jonathan and a breach of that fiduciary duty.

As to the third element, the complaint alleged that Sam, Arlene, and Avi all knew that Jonathan's directing the transfer of Passover FB assets to Lasko Getaways would constitute a breach of Jonathan's fiduciary duty to Passover FB.

As to the fourth element, the complaint alleged that Sam, Arlene, and Avi all assisted Jonathan's breach of fiduciary duty by, among other things, diverting clients and potential clients from Passover FB to Lasko Getaways. Even though some of the allegations of the complaint may have been conclusory or may have been allegations of innocent conduct, the complaint—taken as a whole—alleged sufficient ultimate facts against each of Sam, Arlene, and Avi on the element of substantial assistance.

Contrary to the trial court's conclusion, the allegations against Sam, Arlene, and Avi were not commingled. The complaint set forth separate counts for aiding and abetting breach of fiduciary duty against each of them. Although the complaint sometimes referred to the Appellees collectively as the "Lasko Family," the complaint alleged specific conduct against each of Sam, Arlene, and Avi within each count. As just one example, the complaint alleged that Arlene held herself out as vice president of Passover FB and fraudulently endorsed checks payable to Passover FB.

The circuit court erred in dismissing Counts 2, 3, and 4 of the Fourth Amended Complaint for failure to state a cause of action.

### *The Fourth Amended Complaint Stated a Cause of Action for Conversion as to Some of the Property Described in the Complaint*

The circuit court erred in dismissing the entirety of Count 5 of the Fourth Amended Complaint, which stated a cause of action for conversion.

12

Although some items of the claimed damages are not recoverable in conversion, other categories of damages properly fall under the allegation that "the Lasko Family transferred Passover FB's Assets to Lasko Getaways, wrongfully depriving Passover FB of its property."

Relevant Law

"Conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) (internal quotation marks omitted). "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011). The essence of an action for conversion is "not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled." *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858, 860 (Fla. 1948).

Money can be the subject of conversion "so long as it consists of specific money capable of identification." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970). To be a proper subject of conversion, "there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Id.*

"Historically, it was only tangible property that could be converted." *Joe Hand Promotions, Inc. v. Jacobson*, 874 F. Supp. 2d 1010, 1017 (D. Or. 2012). Florida courts now recognize, however, that "[a]ctions for conversion may properly be brought for a wrongful taking over of intangible interests in a business venture." *In re Estate of Corbin*, 391 So. 2d 731, 732 (Fla. 3d DCA 1980) (footnote omitted). "Recovery properly extends to the good will of a business." *Id.* at 733.

"Goodwill is property of an intangible nature commonly defined as the expectation of continued public patronage." *Thompson v. Thompson*, 576 So. 2d 267, 269 (Fla. 1991). "Because good will inseparably adheres to a business and its assets, it cannot be the subject of conversion unless the business or its assets are also the subject of conversion." *Weinberg v. Wallace*, 442 S.E.2d 211, 213 (S.C. Ct. App. 1994).

This court has held that a confidential patient list is a proper subject of a cause of action for conversion. *Warshall*, 629 So. 2d at 905. However, the alleged conversion of the patient list in *Warshall* occurred prior to June 30, 1988, which was before the enactment of Florida's Uniform Trade

Secrets Act. *Id.* at 904; Ch. 88-254, § 8, Laws of Fla. (setting forth an effective date of October 1, 1988).

Florida's Uniform Trade Secrets Act ("FUTSA") displaces "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." § 688.008(1), Fla. Stat. (2017). However, this preemption does not affect: "(a) Contractual remedies, whether or not based upon misappropriation of a trade secret; (b) Other civil remedies that are not based upon misappropriation of a trade secret; or (c) Criminal remedies, whether or not based upon misappropriation of a trade secret." § 688.008(2), Fla. Stat. (2017). Thus, as a general rule, "other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *New Lenox Indus., Inc. v. Fenton,* 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007) (applying Florida law).

<u>This Case</u>

Here, the Fourth Amended Complaint stated a cause of action for conversion as to some of Passover FB's assets. The complaint alleged sufficient ultimate facts to show Passover FB's property was converted and Lakso Getaway's wrongful dominion over that property.

Florida law recognizes that an action for conversion may be based upon a wrongful takeover of the intangible interests in a business venture. *In re Estate of Corbin,* 391 So. 2d at 732. Moreover, recovery properly extends to the goodwill of the business. *Id.* at 733. Thus, goodwill can be the subject of conversion so long as the business or its assets are also the subject of conversion.[2] Here, the complaint adequately alleged that Lasko Getaways wrongfully took over both tangible and intangible interests in Passover FB's business venture, including intellectual property consisting of websites.

Many of the assets identified in the complaint are the proper subject of a conversion claim. Notably, the complaint states a claim for conversion of hard assets, including five tractor-trailers and their contents. Contrary to the Lasko Defendants' suggestion, the allegations of the complaint were not too imprecise to state a cause of action. Count 5 explicitly alleged that Lasko Getaways "wrongfully asserted dominion and control" of specifically-identified assets of Passover FB, including the five tractor-trailers and their contents. Count 5 also alleged that Lasko Getaways,

---

[2] We do not reach the issue of whether a claim for conversion of goodwill *as a separate asset* is cognizable under Florida law.

through its agents, transferred "possession, ownership and/or control" of Passover FB's tangible personal property to Lasko Getaways. Viewed in the light most favorable to Taubenfeld, the complaint alleged facts sufficient to show ownership of the tangible property and the defendant's wrongful assertion of dominion over it. No more detail was required.

We agree with the Lasko Defendants that Taubenfeld failed to state a cause of action for conversion for some of the property in the complaint. The complaint alleged the conversion of cash, but it failed to allege any specific money capable of identification. Additionally, to the extent the conversion claim encompasses a claim for misappropriation of trade secrets, such a claim is preempted by the FUTSA. Also, we have found no authority to suggest that a business or contractual relationship can be the object of a conversion. We affirm the dismissal of the complaint as it applies to the matters contained in this paragraph.

Because the Fourth Amended Complaint stated a cause of action for conversion as to some of Passover FB's assets, we reverse the dismissal of Count 5.

### *The Circuit Court Erred in Dismissing with Prejudice the Second Amended Complaint's Claims for Aiding and Abetting a Conversion*

Count 5 of the Second Amended Complaint asserted a claim against Jonathan, Sam, Arlene, and Avi for aiding and abetting Lasko Getaways' conversion of Passover FB's property. The circuit court dismissed that claim with prejudice on the ground that "Florida law does not recognize a cause of action for aiding and abetting a conversion."

<u>Relevant Law</u>

"[T]he majority of case law, including that in Florida, recognizes a cause of action for aiding and abetting common law torts, such as breach of fiduciary duty." *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991); *see also Ft. Myers Dev. Corp. v. J.W. McWilliams Co.*, 122 So. 264, 268 (Fla. 1929) (recognizing that liability may attach for "aiders and abettors of fraudulent promoters of corporations"); *Fonseca*, 212 So. 3d at 442 ("Florida law recognizes a cause of action for aiding and abetting the breach of a fiduciary duty."); *Roos v. Morrison*, 913 So. 2d 59, 68 n.1 (Fla. 1st DCA 2005) ("Florida courts recognize the 'acting in concert' basis for joint and several liability.").

To state a claim for aiding and abetting a tort in Florida, a plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer;

(2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 906 (11th Cir. 2012) (applying Florida law). Likewise, the Second Restatement of Torts provides that: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" *Restatement (Second) of Torts* § 876 (Am. L. Inst. 1979).

No Florida case directly holds that a claim for aiding and abetting conversion does or does not exist in Florida.

The Florida state court cases cited by Taubenfeld do not explicitly address the viability of a claim for aiding and abetting conversion under Florida law. *See, e.g.*, *Chereton v. Lawrence Warehouse Co.*, 92 So. 2d 410, 410–11 (Fla. 1957) (affirming judgment upon jury verdict in favor of the plaintiff where the complaint asserted claims for conversion or, in the alternative, aiding and abetting conversion); *Bowers v. Allez*, 165 So. 3d 710, 711 (Fla. 4th DCA 2015) (affirming default judgment where one of the plaintiff's claims was aiding and abetting conversion).

Still, the Florida Supreme Court has recognized that codefendants can be held jointly liable for conversion. *See Wilson Cypress Co. v. Logan*, 162 So. 489, 490 (Fla. 1935). And, in *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1325–26 (M.D. Fla. 2013), the federal district court held that the plaintiffs had sufficiently pleaded a claim under Florida law for aiding and abetting conversion.

<u>This Case</u>

Because Florida recognizes aiding and abetting liability for common law torts, it follows that Florida recognizes a claim for aiding and abetting conversion. This conclusion is consistent with the approach taken in the Second Restatement of Torts, which recognizes liability for aiding and abetting "the tortious conduct of another," without distinguishing among different underlying torts. On this issue, we see no logical reason to treat conversion differently from any other common law tort. Therefore, the trial court erred in dismissing Count 5 in the Second Amended Complaint on

16

the sole ground that Florida does not recognize a claim for aiding and abetting conversion.[3]

## Conclusion

We have considered the other arguments raised in support of affirming dismissal and find them to be without merit.

We affirm the circuit court's dismissal of cash, misappropriation of trade secrets, and the loss of business or contractual relationships as items of damage in the conversion count. We otherwise reverse the orders of dismissal and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

CONNER, C.J., and WARNER, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[3] We decline to reach the Lasko Defendants' argument that dismissal of Taubenfeld's claims for aiding and abetting conversion was appropriate because agents cannot aid and abet their principal under the intra-corporate conspiracy doctrine. This argument was not raised in their motions to dismiss the Second or Fourth Amended Complaint. Nor did the trial court ever rule on this argument. For example, the trial court did not address issues concerning whether the intra-corporate conspiracy doctrine should be extended to claims for aiding and abetting or whether the personal stake exception is applicable under the facts alleged in the complaint. *See Mancinelli v. Davis*, 217 So. 3d 1034, 1038 (Fla. 4th DCA 2017) (discussing the intra-corporate conspiracy doctrine); *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 653 (Fla. 4th DCA 2020) (discussing the personal stake exception to intra-corporate conspiracy doctrine); *see also Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 755 (Cal. Ct. App. 1996) (discussing the intra-corporate conspiracy doctrine and concluding that "[s]imilar reasoning applies to aiding and abetting"); *but see Miller v. York Risk Servs. Grp.*, No. 2:13-CV-1419 JWS, 2013 WL 6442764, at *5 (D. Ariz. Dec. 9, 2013) (distinguishing between conspiracy and aiding-and-abetting claims, and explaining that the defendant did not "cite any authority to convince the court that an agent cannot aid and abet his principal in the commission of a tort").